## CLARK BROOKS *vs.* JONATHAN BIGELOW.

Suffolk.    March 26. — May 8, 1886.    W. ALLEN & HOLMES, JJ., absent.

If a check made in this Commonwealth, and payable to a resident of another State, is deposited by him in a bank there, where he has a general account, under an agreement that all checks drawn on banks in other places shall be passed to his credit on the day of deposit, but, if they are returned unpaid, they shall be charged to his account, and by the law of that State the bank is not his agent in collecting the check, but becomes the owner of it, with the right of charging it back to his account if it is not paid by the bank on which it is drawn, the receiver of the bank, which suspends business on the day of such deposit, may maintain an action for the amount of the check against the maker, who cannot avail himself, in defence, of the fact that, upon such suspension, the payee of the check stopped payment of the same.

CONTRACT, by the receiver of the Clairmont Savings Bank of New York, against the maker of two checks on the Blackstone National Bank of Boston, for $144.33 and $123.42, dated September 13 and 14, 1877, respectively, and payable to the order of C. S. Durling.    Trial in the Superior Court, without a jury, before *Rockwell*, J., who allowed a bill of exceptions, in substance as follows:

Durling testified that he was a resident of Brooklyn, New York; that, in the year 1877, he had a so-called check account with the Clairmont Savings Bank, which then did business in

the city of New York; that the account was opened on October 9, 1874, and closed on September 15, 1877; that he was in the habit of making deposits to the credit of that account, and drawing checks against it; that he deposited on this account one of the checks in suit on the 14th, and the other on the 15th of September, 1877; that he had a deposit-book or pass-book; that the checks were deposited with other funds, namely, bills, but no other checks, the amounts credited being $254.61 on the 14th, and $276.66 on the 15th, said amounts including checks and bills; that the deposits of these checks were entered by the receiving officers of the bank in this book, at the time he made the deposits, and that no statements were made to him at that time by either officers or clerks; that the checks were delivered to said bank to be collected for him, and nothing occurred at the time of the deposits of these checks; that he opened the account with the agreement, made with the president of the bank, that all out-of-town checks should be passed to his credit on the day of the deposit, but, if they were returned unpaid, they were to be charged to his account; and that this agreement was explained to the receiving and paying tellers, and the checks were indorsed in blank under this agreement.

It was admitted that the receiver would testify, if called, that the bank was, and for some time prior thereto had been, insolvent; but there was no evidence that the insolvency was known to the officers of the bank prior to its suspension, or that it had been fraudulently carried on. It was also admitted that the bank was a savings bank; and that the bank suspended payment on September 15, 1877, the bank examiner having closed the same.

Due demand for payment of the checks was made upon the Blackstone National Bank, which refused payment, and upon the defendant.

It also appeared in evidence, uncontradicted, that, upon said suspension, Durling telegraphed to the defendant, and stopped payment of the checks. The checks were returned to the bank unpaid, but the bank did not return them to Durling. When the bank suspended, the amount deposited to Durling's credit was $498.69, exclusive of said checks.

The law of New York in relation to savings banks — Rev. Sts. (6th ed.) *c.* 18, art. 9, §§ 368, *cl.* 7, 389, 397, and 399 — was put

in evidence by the defendants; and the case of *Metropolitan National Bank* v. *Lloyd*, 25 Hun, 101, and 90 N. Y. 530, was put in by the plaintiff.

The defendant requested the following findings and rulings: "1. That the checks in question were deposited by C. S. Durling for collection; that the bank received them as his agent for the purpose of collecting them, and depositing the proceeds to his credit. 2. That the suspension of said bank, before said checks were collected and paid, revoked said agency. 3. That Durling stopped the payment of said checks immediately after the suspension of the bank, and revoked said agency. 4. That, under the law of New York, said bank had no authority or power to receive said checks as a cash deposit, and must be deemed to have received them simply for collection as Durling's agent." All of which the judge refused.

The judge found that the relation existing between the bank and Durling, as testified to by him, was one by which the checks were credited as cash when deposited, with the right on the part of the bank of returning to Durling and charging back to him unpaid out-of-town checks, but did not compel such return; ruled that, if the bank did not return to Durling such checks, it had the right to recover upon them in this action, and that the defendant could not avail himself of the stoppage of payment of them by Durling as a defence; and found for the plaintiff in the sum of $397.50. The defendant alleged exceptions.

*H. Stevens*, for the defendant.

*J. L. Stackpole*, for the plaintiff.

FIELD, J. The law of the State of New York was a fact, and the evidence introduced of what that law was, in connection with the other evidence, warranted the court in finding that, by that law, the bank was not merely the agent of Durling in collecting the checks, but became the owner of them, with the right of charging them back to Durling in his account if they were not paid by the bank on which they were drawn. On such a finding, the rulings of law were correct. There is nothing in the statutes of New York which were put in evidence that affects the rights of the plaintiff against the defendants.

*Exceptions overruled.*