### FIRST NAT. BANK OF ELKHART v. ARMSTRONG.

*(Circuit Court, S. D. Ohio, W. D. July 12, 1889.)*

**1. BANKS AND BANKING—COLLECTIONS—INSOLVENCY.**

By agreement and custom the Fidelity Bank received drafts from its correspondent bank at E., and credited them to it as cash, with the understanding that any draft which was unpaid should be charged back to the correspondent. The latter forwarded drafts which were credited to it, but were not collected before the Fidelity Bank failed. The drafts were paid after the appointment of a receiver, and the moneys actually came into his hands. The drafts were indorsed payable to the Fidelity Bank "for collection for the" bank at E. *Held* that, as the drafts were, when received, credited as cash to the bank at E., which had the right at once to draw against them, the indorsement for collection did not affect the result, and the bank had only the rights of a general creditor.

**2. SAME—PROOF OF CLAIM.**

The Fidelity Bank, when it failed, owed $5,361.40 to the bank at E., which had collected $1,873.97 on drafts of other banks sent to it by the Fidelity Bank for collection, and had credited the proceeds to the Fidelity Bank. The proceeds were claimed both by the banks which had sent them and by the receiver of the Fidelity Bank. *Held*, that the bank at E. should be allowed to prove up its claim before the receiver for whatever amount it saw fit, and the receiver should be allowed to accept the proof and pay a dividend thereon, without prejudice as to any claim he might have on the proceeds of the drafts collected by the bank at E.

In Equity.

Agreed statement for instructions in the matter of the First National Banks of Elkhart, Ind., against David Armstrong, receiver of the Fidelity National Bank of Cincinnati, Ohio.

*J. M. Van Fleet*, for complainant.

*Kittredge & Wilby* and *W. B. Burnet*, for defendant.

SAGE, J., (*orally.*) This case is before the court on an agreed statement for instructions under the banking law. The case stated is that these two banks had mutual dealings. The First National Bank of Elkhart claims that the Fidelity National, at the time of its failure, owed the Elkhart Bank a large sum of money, which is unpaid. The First National Bank of Elkhart sent to the Fidelity National Bank, for credit and advice, certain sight drafts and checks (charging them to the Fidelity Bank on the date they were sent) on certain persons and banks, as appears by the agreed statement of facts. The total amount of these drafts is $1,106.70. Each of them was indorsed as follows: " Pay Fidelity National Bank of Cincinnati, Ohio, or order, for collection for the First National Bank. of Elkhart, Ind. WILLIAM H. KNICKERBOCKER, Cashier." Each of these drafts, upon its reception by the Fidelity National Bank, was credited to the First National Bank as cash, and that gave the Elkhart Bank the right to draw upon the same as cash, as had been agreed between said banks, as shown by a letter of the counsel of the Elkhart Bank, which is attached to the agreed statement of facts, and made a part thereof. This was the uniform custom and understanding of both banks. It was also their uniform custom and understanding that, when any draft should be returned to the Fidelity Bank unpaid, it should be charged back to the Elkhart Bank, and returned to it. The statement then sets forth the facts, which need not be given in detail, of the failure of the Fidelity National Bank on the 20th day of June, 1887, at the close of business on that day, the appointment of a receiver, and the dates when these drafts were sent out to its correspondents,—that is to say, the drafts making up the total of $1,106.70. These dates run from June 15th up to about the date of the failure of the Fidelity National Bank, the 20th of June; and all the drafts were paid after the failure of the Fidelity Bank, or, at least, all received at Cincinnati after the date of the failure, and after the bank had passed into the hands of the examiner, and they actually came into the hands of the receiver, and are in his possession now. On the 8th of January, 1888, the First National Bank of Elkhart demanded these moneys of the receiver, and he refused to comply with the demand. That is the first branch of the case, and the question presented is whether the Elkhart Bank, as to the proceeds of those drafts, stands in the position of a general creditor, or whether those proceeds, having been received, not by the Fidelity Bank, but by the receiver, should be treated as trust funds which he should, therefore, pay in full to the Elkhart Bank. It appears from the letter of counsel for the Elkhart Bank, which is attached to the statement of facts, and referred to as a portion thereof, that, prior to the negotiations between the Elkhart Bank and the Fidelity Bank, a circular was mailed to the Elkhart Bank by the Fidelity Bank, offering to collect drafts, and, upon their receipt for collection, to credit the amounts as cash to the banks sending the drafts, with the understanding that, if any draft was not collected, the amount thereof should be charged back

to the sending bank. Upon that understanding the Elkhart Bank sent drafts, including those above referred to, to the Fidelity Bank for collection. But it is insisted that, inasmuch as these particular drafts were indorsed, not generally, but in terms, "for collection," the restrictive indorsement prevented the title to the drafts passing to the Fidelity, and, therefore, that the receipt of the proceeds, upon collection, by the receiver was a receipt on account of the Elkhart Bank, and the money must be paid over. If the premises are correct, the conclusion follows as a matter of course. But let us analyze the transaction, and see where it places these parties. Upon the receipt of the drafts they were credited as cash to the Elkhart Bank, and the Elkhart had the right to draw against them. Now, suppose that the Fidelity National Bank had not failed, upon the collection of the drafts, to whom would the proceeds belong? Could a creditor of the Elkhart Bank have reached them by process in attachment in the hands of the collecting bank, before they were transmitted to the Fidelity Bank? Clearly not. The Fidelity National Bank had given the Elkhart Bank credit for the amount of the drafts as cash, and, if the drafts were paid, that ended the transaction as between the Fidelity Bank and the Elkhart Bank. No other entry would be necessary in the account between the two banks, and I am not able to see that the indorsement "for collection," under these circumstances, affected the result, or reserved to the Elkhart any title to the proceeds of the drafts. The agreement that the drafts should be charged back if not paid did not operate to change this result, for the indorsement and the arrangement for credit to the Elkhart Bank must be taken together; and, while it is true that the indorsement "for collection" did not of itself transfer the title, I am quite clear that the credit to the Elkhart Bank, together with the indorsement, did transfer the entire interest in the proceeds of the drafts to the Fidelity Bank, and that the agreement to charge back if any draft was not paid did not affect the character of the transaction. That was nothing more than would have resulted without any such agreement, unless the indorsements to the Fidelity were expressly without recourse. If the drafts were purchased by the Fidelity out and out with a general indorsement, the case would differ from the case presented to the court only in the respect that, upon the failure of the drawee to meet the draft, protest would have been necessary, whereas it may be that, by virtue of the agreement, protest was not necessary. The conclusion of the court is, therefore, that as to those drafts the First National Bank of Elkhart must take its place in the list of general creditors.

The second branch of the case presents a different question. It may be stated as follows: The Fidelity National Bank is indebted to the First National Bank of Elkhart, Ind., including the $1,106.70 above mentioned, in the sum of $5,361.40, about which there is no dispute. There is also a further sum of $1,873.97, composed of four collections, as follows: Fidelity, No. 60,304. Maxon & Darling note, $831.54. Due July 2, 1887. Old National Bank, Grand Rapids, Mich. Fidelity, No. 60,305. Maxon & Darling note, $729.38. Due January 26, 1887. Old National

Bank, Grand Rapids. Fidelity, No. 67,403. Davis & Co. note, $101.50. Due January 28, 1887. Third National Bank, Detroit. Fidelity, No. 67,404. Bradford note, $211.55. Due January 27, 1887. Third National Bank, Detroit. The Fidelity National Bank owes these amounts, either by way of set-off to the First National Bank of Elkhart, or to the Old National Bank of Grand Rapids, Mich. and the Third National Bank of Detroit. These claims arose in this way: The Old National Bank of Grand Rapids, Mich. and Third National Bank of Detroit sent drafts and notes to the First National Bank of Elkhart, which collected and credited them to the Fidelity National Bank. The Old National Bank of Grand Rapids now claims the sum of $1,560.92, being a part of the proceeds of said collections, and the Third National Bank of Detroit claims the sum of $313.05, being the residue of the proceeds of said collections, and both banks threaten to sue said First National Bank therefor. The receiver claims that the banks for whose account the drafts were collected are entitled to the proceeds, and he refuses to allow the First National Bank of Elkhart to retain the same and have credit in account therefor, and refuses to allow said First National Bank to prove up its claim for the undisputed debt of $5,461.40 above referred to, unless it will also include said $1,873.97, which said First National Bank refuses to do. Said First National Bank has not yet proved up any claim, nor received any dividend. Now, said First National Bank claims that the receiver should pay over to it, at once, said sum of $1,106.70,—that is to say, the amount of the first claim considered in this opinion,—and allow it to prove up its claim for the balance due, less said $1,873.97,—that is to say, prove up its claim for $4,354.70,—and that he should pay it its dividends thereon, and that the said sum of $1,873.97 should be left open until it is determined to whom the same is due and payable. As to some of the questions arising upon this branch of the case, it is not so presented that the court can give any intelligent and complete answer. There is no showing in the statement of facts what were the indorsements by which these drafts and notes were transferred to the Fidelity National Bank. For all that appears, they may have been so transferred as to vest the title in the Fidelity precisely as the court has held with reference to the first class of claims already considered. On the other hand, the notes and drafts may have been indorsed "for collection only," and in that case, as the proceeds were not received by the Fidelity during its existence, and are now in the hands of the First National Bank of Elkhart, they would belong to the banks which sent them to the Fidelity for collection, so that, in the absence of a more specific statement, the court cannot say to whom the proceeds of these notes and drafts belong. But it is evident that the First National Bank of Elkhart is seeking to make a move which may result in giving it a set-off, or allowing it a counter-claim for the amount of these notes and drafts. The court is not at all disposed, in the present aspect of this case, to permit anything of the sort. On the other hand, there seems to be no reason why, if the Elkhart Bank is between two fires, (the receiver claiming these proceeds on the one side, and the banks which forwarded the notes and drafts on the

other,) it should be required to pay this money over at this time to the receiver of the Fidelity Bank; and I see no reasonable objection to allowing the Elkhart Bank to prove up its claim for whatever it choses to prove up. But the receiver must be allowed to accept that proof and pay the dividend on the claim presented, expressly without prejudice, as to his claim, whatever it may be, upon the proceeds of the drafts and notes collected by the Elkhart Bank. If those notes and drafts were indorsed "for collection only," the proceeds belong to the banks that furnished them; but, if the notes and drafts were so indorsed, there really seems to be very little practical importance in the question, for, if the Elkhart Bank pays them over to the receiver, he would be compelled to pay them over to the banks claiming them, and of course that would relieve the Elkhart Bank. The Elkhart Bank will be allowed to prove its claim for the balance, less said $1,873.97, but without prejudice to the receiver, as above indicated.