[No. 14797. *En Banc.* February 20, 1919.]

Old National Bank of Spokane, *Appellant,* v. E. J. Gibson *et al., Respondents.*[1]

Bills and Notes (66, 68)—Checks—"Holder in Due Course"—Conditional Deposit. A bank which received a check for collection on a conditional credit, and honored the depositor's checks exhausting his balance, including the deposited check, thereby becomes a holder in due course, under Rem. Code, §§ 3417 and 3418, providing that a holder is deemed a holder for value where value has at any time been given for the instrument, or, if he has a lien thereon, by contract or implication of law, to the extent of such lien (Mackintosh, Fullerton, Main, and Mitchell, JJ., dissenting).

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 4, 1918, upon sustaining a demurrer to the complaint, dismissing an action on contract. Reversed.

*Wakefield & Witherspoon* and *Harry T. Davenport,* for appellant.

*C. E. H. Maloy,* for respondents.

Tolman, J.—Respondent E. J. Gibson drew a check upon his account in the Fidelity National Bank of Spokane in favor of one J. A. White, in the sum of $440. White, upon receipt of the check, deposited the same to his account in the appellant bank. The deposit slip upon which White listed the check for deposit with appellant bank contained the following provision:

"Items other than cash are received on deposit with the express understanding that they are taken for collection only."

A conditional credit for such deposit was given the depositor, White, who, on the same day, checked out his entire balance in the appellant bank, including the

[1]Reported in 179 Pac. 117.

conditional credit derived through the deposit of the Gibson check, and has since made no further deposits. Thereafter, and in due course, the check was returned to appellant through the clearing house, with the notation that payment had been stopped thereon by the maker, Gibson. Appellant then demanded payment of the amount of the check from Gibson, which was refused, and brought this action to recover the amount thereof. The trial court sustained a demurrer to the complaint. Appellant elected to stand upon its complaint, and judgment of dismissal was entered, from which this appeal was taken.

According to the allegations of the complaint, it is appellant's claim that the check was received by it in the first instance for collection only, according to the terms of the deposit slip, but by later permitting the depositor to check out his entire account, including the amount of the check sued upon, that it thereby became a purchaser for value of such check and entitled to maintain an action against its maker to recover the amount thereof. No rights are based upon the original deposit of the check for collection, but the contention is that the depositor, White, having been paid the full amount of his balance in reliance upon the check now in suit, then on deposit with it, the relationship of principal and agent which had theretofore existed between the depositor, White, and the appellant bank was terminated, and that it did, upon making such payment, cease to hold the check for collection and became a holder in due course under the statute. The question then to be determined is whether, having originally received the check as agent for collection, the bank by honoring White's checks to an amount which entirely exhausted his balance, including the deposited check, thereby became a holder for value?

The respondent relies principally upon the following cases heretofore decided by this court: *Washington Brick, Lime & Mfg. Co. v. Traders Nat. Bank,* 46 Wash. 23, 89 Pac. 157, 123 Am. St. 912; *Morris-Miller Co. v. Von Pressentin,* 63 Wash. 74, 114 Pac. 912; *Belsheim v. First Nat. Bank of White Salmon,* 77 Wash. 552, 137 Pac. 1055; and *American Sav. Bank & Trust Co. v. Dennis,* 90 Wash. 547, 156 Pac. 559. Of these cases, as we view them, only the first and the last touch upon the point involved, as no question of the payment of value or of who was a holder in due course was involved, or could have been raised under the facts or pleadings, in either of the other cases.

In *Washington Brick, Lime & Mfg. Co. v. Traders Nat. Bank, supra,* there is language employed which seems to lend support to respondent's position, but when the issues are carefully analyzed, it does not appear that any party to that action was asserting that it had parted with value because of and in reliance upon the instrument, or had become a holder in due course; and while the opinion might have stated the rule defining a holder in due course of negotiable paper, so as to avoid uncertainty and confusion, yet it is evident that the decision was arrived at and can be sustained without in anywise denying that rule.

In *American Sav. Bank & Trust Co. v. Dennis, supra,* however, this exact question was squarely raised by the pleadings, but appears to have been lost sight of, both in the trial court and in this court. It was decided here upon questions of the admissibility of evidence, and the fundamental question of whether the bank in that case, by payments to its depositor after the check was deposited with it, became a holder for value without notice and in due course was apparently overlooked.

It may be frankly conceded that, in this case, the bank received the check for collection in the first instance, or conditionally, with the right to charge it back to the depositor's account if dishonored; and had no advances been made on account thereof, and so long as the original relationship continued unchanged between the bank and its depositor, the former had no right in, or title to, the check which would be sufficient to constitute it a holder in due course. It may likewise be conceded, for present purposes, as contended for by respondent, that the bank cannot occupy two different and inconsistent positions at the same time. But if the bank did not waive its right or privilege to charge the check back to the depositor upon its dishonor, and yet advanced its money upon the credit of the check so deposited, there is ample authority to support the view that, by making such advances on the credit of the deposited check, it thereby became a holder in due course to the extent of such advances, notwithstanding that it may still have claimed the right to charge the check back to its depositor, if it saw fit. *Scott v. McIntyre Co.*, 93 Kan. 508, 144 Pac. 1002, L. R. A. 1915D 139; *Noble v. Doughten,* 72 Kan. 336, 83 Pac. 1048, 3 L. R. A. (N. S.) 1167; *First Nat. Bank of Elkhart v. Armstrong,* 39 Fed. 231.

It is, however, alleged and claimed in this case that, after the making of the deposit and the giving of the conditional credit before referred to, the bank and its depositor made a new and different contract with reference to the deposited check; that the latter, by presenting his own check and demanding the cash for his entire balance, and the bank by accepting such check and paying the depositor his entire balance, in effect made a new contract by which the bank waived the condition in the credit theretofore given, waived its

right to charge back the check if dishonored, and became the purchaser of the check for value without notice, or a holder in due course. No rule of law is perceived which prevents a bank and its depositors from changing, modifying, or making new and supplemental contracts as often as they may agree so to do. And if any such new or changed and modified contract is material in this case, it appears to be sufficiently alleged. After the deposit of a check and the giving to the depositor of conditional credit therefor, the depositor, by presenting his own check for the amount of his balance, including such conditional credit, thus established beyond argument his desire and request that the theretofore existing condition in the credit be waived or modified. Upon the presentation by a depositor of a check against such conditional credit, the bank may do any one of a number of things: (1) It may refuse to pay the depositor's check until assured that the conditional credit shown in the account of the depositor has become absolute by the payment of the deposited check at the bank on which it is drawn. Such a course would be a refusal to waive or contract away the previously agreed upon condition involved in the depositor's credit. (2) The bank may cash the depositor's check solely upon his individual credit, looking to him solely to pay the overdraft, if one shall result, which would constitute a new contract independent of and distinct from the previous conditional credit contract, and the bank could sue its depositor thereon. (3) The bank might, under the situation which we are now considering, waive the condition created for its own protection, make the conditional credit absolute, and pay the depositor's check upon the credit of the check theretofore deposited by him but not yet collected. This would constitute an

acceptance of the depositor's offer made by presenting his check, and would create a new contract wholly superseding the previous conditional credit contract. (4) Or the bank may, without inconsistency, combine the last two courses suggested and pay the depositor's check on the combined credit of the depositor and of the deposited check; just as in making a loan to a customer upon a note secured by collateral the bank would grant the credit upon the combined worth of the borrower and of the collateral pledged. This also would be an acceptance of the depositor's offer to supersede the contract for conditional credit. The allegations of the complaint and the well known custom of bankers both show that the bank in this instance relied upon the depositor's credit balance, which included the deposited check which went into and helped to create that credit balance, when it cashed its depositor's check in this instance and thereby exhausted the credit balance. And it is immaterial in this case whether the bank relied solely upon the deposited check or also in part relied upon the individual worth of its depositor. In either case it, by the subsequent transaction and by paying out its money upon the credit of the deposited check (no matter what other security in the form of the worth of its depositor it may have thought it had), thereby became the holder of such check in due course.

Our negotiable instruments law, which is the uniform law common to so many states, §§ 3417 and 3418, Rem. Code, provide:

"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

"Where the holder has a lien on the instrument, arising either from contract or by implication of law,

he is deemed a holder for value to the extent of his lien.''

So that, under the statute, it is immaterial to this inquiry whether the bank, by paying its depositor's check, became the absolute owner of the check now in question, or as some authorities seem to hold, obtained only a lien thereon to the amount of its advances. In either case, according to the plain language of the statute, it, under the facts pleaded here, became a holder for value to the full amount for which the check was drawn. The statute above referred to expresses only what has been the law of negotiable paper since the time "whereof the memory of man runneth not to the contrary."

The following are a few of the many authorities which might be cited to the same effect: 5 Cyc. 497; 3 R. C. L. 1056; Morse, Banks & Banking, 573; 7 C. J. 618; *Citizens' State Bank of Hamilton v. Tessman & Co.,* 121 Minn. 34, 140 N. W. 178, 45 L. R. A. (N. S.) 606; *Fredonia Nat. Bank v. Tommei,* 131 Mich. 674, 92 N. W. 348; *Shawmut Nat. Bank v. Manson,* 168 Mass. 425, 47 N. E. 196; *Jefferson Bank v. Merchants Refrigerating Co.,* 236 Mo. 407, 139 S. W. 545; *National Bank of Commerce v. Armbruster,* 42 Okl. 656, 142 Pac. 393; *Oppenheimer v. Radke & Co.,* 20 Cal. App. 518, 129 Pac. 798; and our own case of *German-American Bank of Seattle v. Wright,* 85 Wash. 460, 148 Pac. 769, Ann. Cas. 1917 D 381, which lays down the same principle.

We are convinced that, whether misled by language used in cases where the rights of no holder of commercial paper in due course were involved, or through oversight, this court arrived at a wrong conclusion in the case of *American Sav. Bank & Trust Co. v. Dennis, supra,* and that the trial court relied upon that

case in making the ruling complained of here. In order, therefore, to be in harmony with the statute, with the law of negotiable paper as it has existed from the beginning, and with the great weight of authority everywhere, the case of *American Sav. Bank & Trust Co. v. Dennis, supra,* so far as it affects this question, must be, and it is hereby, overruled.

The demurrer admits that the bank in this case advanced to its depositor the amount of the check now in suit upon the faith and credit of the check itself; that it did so in good faith and without notice of any possible defense on the part of the maker of the check, and it is therefore a holder in due course, as we have seen, and the demurrer must be overruled.

Judgment reversed.

CHADWICK, C. J., HOLCOMB, PARKER, and MOUNT, JJ., concur.

MACKINTOSH, J. (dissenting)—The case of *American Sav. Bank & Trust Co. v. Dennis,* 90 Wash. 547, 156 Pac. 559, properly describes what was done by the plaintiff in this case as the granting of "a mere gratuitous privilege" which did not make it a holder for value of the deposited check. The bank cannot, by granting a privilege, alter the relationship contracted for and evidenced by the deposit slip and secure for itself the choice of a remedy against either its depositor or against the maker of the check as it may deem most advantageous. When it received the check for collection it agreed to consider its depositor primarily liable by way of holding his account subject to a back charge in the event that the check was, for any reason, dishonored, and not to hold him liable as the indorser of the check, which liability would be more difficult to enforce; the one being a matter of book-

keeping and the other involving a lawsuit in the event liability was denied. I therefore dissent.

FULLERTON, MAIN, and MITCHELL, JJ., concur with MACKINTOSH, J.