[No. 23065. Department One. July 22, 1931.]

H. J. MAURY, *Respondent*, v. TOLEDO LOGGING COMPANY et al., *Defendants*, TOLEDO STATE BANK, *Appellant*.[1]

[1]Reported in 1 P. (2d) 896.

564

*Hull & Murray, Grant Armstrong,* and *J. H. Jahnke,* for appellant.

*C. D. Cunningham* and *Ponder & Ponder,* for respondent.

HOLCOMB, J.—This is an appeal from a judgment in favor of respondent as garnishor against appellant as garnishee defendant, upon a controverted answer of the garnishee defendant, tried by the court.

On October 25, 1927, respondent recovered judgment against the principal defendant, Toledo Logging Company, a corporation, in the sum of $5,556; the judgment remained wholly unpaid and unsatisfied except that, by application of the sum of $916.33 previously recovered by garnishment against the same garnishee defendant on October 19, 1926, the balance left due and unpaid was $4,639.67, with interest thereon from October 25, 1927, at six per cent per annum.

On about November 15, 1926, a second writ of garnishment was issued in the cause, directed to the same garnishee defendant, which on that same date made answer to the writ and denied that it was indebted to the principal defendant or any other of the defendants named in the writ, denied that the principal defendant or any other of the defendants was the owner of any stock in its bank, and stated that it had no personal property belonging to the principal defendant or any of the other defendants named. In the answer it was further alleged that, if there was any fund or deposit in the Toledo State Bank which belonged to the principal defendant or any other of the defendants, and if such funds were deposited to the name and credit of any other person, it had no knowledge of such funds.

This answer of garnishee defendant was controverted by respondent, who alleged in his controverting

answer and affidavit that the garnishee defendant did, when the last writ was served upon it, have a large sum of money in its possession belonging to, and was indebted to, the principal defendant in a sum in excess of the amount sued for by respondent, which indebtedness consisted of a deposit of money in the garnishee defendant's bank belonging to the principal defendant, which fund stood in the name of William Uhri; and, although the money of the principal defendant, the money had been placed in the name of William Uhri for the sole purpose of defrauding the creditors of the principal defendant, and that the principal defendant and the garnishee defendant had conspired together how to place the money of the principal defendant beyond the reach of its creditors; that the money and the whole thereof was, in fact, the money of the principal defendant; and that the garnishee defendant well knew that it belonged to the principal defendant, and that it, as garnishee defendant, was indebted to the principal defendant in the amount thereof; that Uhri was merely a figurehead, and that his name was used by the principal defendant and the garnishee defendant for the purpose of concealment; and that Uhri never had at any time any right, title or interest in such deposit or any part thereof, all of which was well known to the garnishee defendant.

Upon these issues, the trial court, after having heard the witnesses and judging their credibility, found in favor of respondent.

The trial court made twelve findings of fact and a conclusion of law to the effect that respondent was entitled to judgment against appellant, garnishee defendant, in the sum of $4,639.67 with interest thereon from October 25, 1927, at the rate of six per cent per annum until paid, and costs and disbursements. A number of findings and a conclusion in favor of ap-

pellant were submitted by it, which were rejected by the trial court. Judgment was entered in accordance with the findings and conclusion made by the court.

According to the testimony on behalf of respondent, the writ of garnishment on which this hearing was had, after being issued on November 15, 1926, was served on Buckmaster, president and managing official of appellant, at about 1:15 to 1:30 p. m. of that day. Immediately before the service of the writ, a little after one o'clock, Buckmaster and Shives, president and managing officer of the Toledo Logging Company, the principal defendant, drove up to the bank together, got out of the car and went into the bank. Shives had in his hand what appeared to be a check book with some papers in it. He was in the bank for about five minutes, and when he came out no papers were to be seen. About fifteen minutes after Shives came out of the bank, the writ was served. Upon the service of the writ on him, Buckmaster said nothing, but was observed to have become very nervous.

Uhri was the bookkeeper for both the Toledo Logging Company and the Winlock and Toledo Logging and Railway Company, both of which were managed by Shives. Uhri had no personal interest in either of these companies, being merely a salaried employee. He had a small personal account of his own in the above bank, and there was also a balance of $378.05 standing in his name in the bank which was derived from the sale of logs by the Logging Company to the Winlock & Toledo Lumber Company, which had kept the account in Uhri's name, after the first writ of garnishment had been served, for the purpose of paying the obligations of the Logging Company.

After the visit of Shives to the bank in company with Buckmaster, there was then on deposit in the name of Uhri $10,378.05, of which $10,000 was under the name

of "William Uhri, Special." It also appears that on November 13, 1926, the Winlock & Toledo Lumber Company forwarded to Shives, one of its officers, its check payable to him in the sum of $10,000, drawn upon the Bank of California of Portland, Oregon. This is the check which was deposited to the credit of "William Uhri, Special," but the deposit slip was made out in the name of "William Uhri, No. 2, checks as follows: A. C. S. $10,000." This deposit slip bears upon its face at the bottom the following words:

"In accepting checks on other banks, this bank accepts as agent only for collection of same and assumes no responsibility for payment until proceeds have been received. Under these conditions items previously credited may be charged back to depositor's account."

At this point occurs a heated contest as to what the facts are. Appellant claims that, immediately after the service of this writ of garnishment, Buckmaster made inquiry of Uhri and Shives by telephone as to whether or not the Logging Company had any interest in the deposit of the $10,000, and was informed by them that the Logging Company had no interest therein. Appellant strenuously insists that this testimony is uncontroverted, while respondent contends that all the reasonable inferences and circumstances show to the contrary.

Appellant proceeded immediately to honor checks payable to laborers on the October payroll of the principal defendant in the aggregate of more than $8,000, and also other bills of the Logging Company. On the same day, appellant answered that it was not indebted to the Logging Company, and had no property or effects of the Logging Company in its possession or control. All the money had been checked out at the time the answer was verified.

Up to the day of the service of the writ, the answer

of appellant, and paying out the funds by appellant, the Logging Company had been in full operation. From the time of the service of the previous writ of garnishment and adjudication thereon, there had been no change by Uhri in the method of paying the men working for the Logging Company, and for freight and supplies. When the $10,000 check was deposited in appellant bank, there was no understanding between the bank, the Lumber Company and the Logging Company, or with Shives or Uhri, that the funds standing in the name of Uhri were to be used for any particular purpose. Ever since the account had been opened in the name of Uhri, the funds had been available for the exclusive use and benefit of the Logging Company. Shives had asked Uhri, who, it will be remembered, was only a salaried bookkeeper, if it would be all right to deposit money in the bank in his name. This being assented to, the deposits were so made.

After the service of this writ of garnishment, the Winlock and Toledo Lumber Company, the drawer, caused payment to be stopped on the $10,000 check at the bank on which it was drawn. The credit entered by appellant for the check was thereupon charged back against the deposit. The Lumber Company thereafter indemnified appellant in the aggregate amount of the checks it had paid out.

After this writ of garnishment was served, on application of respondent, Uhri was brought in as a party defendant in the action. Subsequently, Uhri testified in a deposition that he had no interest whatever in the special deposit carried in his name in appellant bank, and that he paid it out on the obligations of the Logging Company. Later, Uhri died and his personal representative was not substituted in the action. At the trial of the case, on motion of attorneys who had represented him, he was dismissed as a party.

The first contention of appellant is that the controverting answer of respondent to the answer made by appellant was defective, because it contained no allegation that the principal defendant had no other funds or property from which respondent could satisfy his claim.

The above contention is untenable. *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53, and cases therein cited as supporting the decision there, were all actions to set aside fraudulent conveyances which had been made for the purpose of defrauding creditors. This is not such an action. The writ in this case with the controverting affidavit is for the sole purpose of subjecting funds belonging to the principal defendant to respondent's judgment. Obviously, although respondent knew that the principal defendant had funds with which it was paying its obligations, it did not know and could not tell in what way those funds were kept, or in whose name.

The testimony of Uhri, disclaiming any interest in the fund, conclusively establishes that the fund did not belong to him. Since it was paid out, immediately after the service of the writ of garnishment, on obligations of the principal defendant rather swiftly, during the same afternoon, and the answer in garnishment made immediately thereafter, the inference is almost unescapable that the funds were deposited in appellant bank in the name of Uhri for the purpose of concealment; and, inasmuch as the operations were the same after the deposit of the $10,000 as they had been for the preceding month, it is difficult to believe that appellant's president was ignorant and innocent of the purpose.

This case is therefore governed by *Millar & Co. v. Plass,* 11 Wash. 237, 39 Pac. 956. We there held that, in garnishment proceedings, the plaintiff is entitled to

show that the garnishee defendant, by reason of some understanding, either secret or expressed, is the trustee or holder of the property of the principal debtor in order to keep it out of the reach of creditors; and in such case the garnishee may be held by the creditor for the amount of the property, although the principal debtor may have no right to enforce a claim therefor against such garnishee; and that in such proceedings the fraudulent character of the transfer of property from the principal debtor to the garnishee defendant may be shown.

Money deposited in the name of an individual in his own name, followed by a word indicating that he holds it in some representative or fiduciary capacity, may be garnisheed as the property of the principal when such ownership is established. *Gregg v. The Farmers & Merchants Bank of Hannibal*, 80 Mo. 251; *Raynes v. The Lowell Irish Benevolent Society & Trustee*, 4 Cushing (Mass.) 343; *Simmons v. Almy & Trustee*, 100 Mass. 239.

"So if a bank summoned as garnishee had in fact knowledge or notice of facts which should have informed it that a fund deposited by a third person belonged to defendant, it will be held liable, although it paid out the money after the service of the writ on the order of the depositor." 28 C. J. 264.

Therefore, since appellant knew of the transactions for the preceding month in paying out all the obligations of the principal defendant from a deposit in the name of Uhri, it at least had knowledge of facts which should have caused it to make diligent inquiry of the true relation of the fund in its charge when the last writ was served upon it.

Appellant also contends that Uhri was a necessary party to the garnishment proceeding in order to determine the rights of all parties, and that the order

dismissing him from the action was erroneous, citing *Moore v. Gilmore,* 16 Wash. 123, 47 Pac. 239, 58 Am. St. 20, and 28 C. J. 207.

As stated in 28 C. J. 207:

"All parties having or claiming an interest in the debt or property due or held by the garnishee should be made parties."

Uhri's disclaimer concludes this question because it conclusively establishes that Uhri had claimed no interest in the funds in question. See *Douthitt v. MacCulsky,* 11 Wash. 601, 40 Pac. 186; *Shoemake v. Finlayson,* 22 Wash. 12, 60 Pac. 50; *Masterson v. Union Bank & Trust Co.,* 86 Wash. 560, 150 Pac. 1126.

Appellant also asserts that the rights of respondent can rise no higher than the rights of the principal defendant respecting this fund; and, since the principal defendant could not demand the fund of appellant, and had no control thereof and no property rights therein, certainly respondent could not acquire any by garnishment. To this point appellant cites: *Bellingham Bay Boom Co. v. Brisbois,* 14 Wash. 173, 44 Pac. 153, 46 Pac. 238; *Ford v. Aetna Life Ins. Co.,* 70 Wash. 29, 126 Pac. 69; *Barkley v. Kerfoot,* 77 Wash. 556, 137 Pac. 1046; *Beaston v. Portland Trust & Savings Bank,* 89 Wash. 627, 155 Pac. 162; *First National Bank of Everett v. Neilsen,* 92 Wash. 84, 159 Pac. 113; *Searle v. Bird,* 94 Wash. 21, 161 Pac. 838; *Austin v. Wallace,* 117 Wash. 61, 200 Pac. 566; and 28 C. J. § 46, p. 44.

The assumption contained in this contention, that the Logging Company could not demand the fund of the bank and had no control thereof and had no property rights therein, is incorrect and the cited cases inapt if, as was found by the court, the fund was provided by the Lumber Company to the Logging Company for its purposes. The assumption assumes the

existence of the principal fact in issue. As to this, as the trial court observed, the stockholders in these companies were largely the same men; the president of the Toledo Logging Company, Shives, was a director in the other company. There was also another corporation called the Toledo Railroad Company owned by the same stockholders. The officers of these companies and the president of appellant all testified in behalf of appellant, and their demeanor, of course, was observed by the trial judge.

During the testimony of Buckmaster, the trial judge himself asked him whose check the $10,000 check was, to which the witness replied he believed it was the Winlock & Toledo Lumber Company's. The court then asked if they were the ones that had been dealing with the Toledo Logging Company, and the witness answered "yes" and that he knew that item. He also replied to a further question that he did not inquire into whether or not the money was the property of the bookkeeper (Uhri), since the bank had been informed that the Toledo Logging Company was no longer in existence.

The trial court was not bound to believe any of the deeply interested witnesses for appellant. Inasmuch as the Logging Company had been doing business consistently for some time with appellant, and for about a month in the same way as at the precise time in question, its employees and others doing business with them having been paid off on the afternoon of the very day in question, it would seem that the trial court was justified in not accepting the evidence for appellant.

Appellant further asserts that the check in question not having been accepted by the Portland bank, the drawer had a right to and did stop payment upon the check. Upon this contention appellant cites: *Hanson v. Northern Bank & Trust Co.*, 98 Wash. 124,

167 Pac. 97; *Bank of California v. Starrett,* 110 Wash. 231, 188 Pac. 410, 9 A. L. R. 177; *Vickers v. Machinery Warehouse & Sales Co.,* 111 Wash. 576, 191 Pac. 869; *Conner v. First National Bank,* 113 Wash. 662, 194 Pac. 562; *Raynor v. Scandinavian American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716, of our cases, and other outside cases.

Appellant concedes that the case of *Old National Bank v. Gibson,* 105 Wash. 578, 179 Pac. 117, 6 A. L. R. 247, is apparently against it, but says that in the later *Vickers* case, *supra,* the rule of the *Old National Bank* case was modified or limited.

We consider the *Old National Bank* case, *supra,* squarely against the contention of appellant, and there is nothing to the contrary in our subsequent cases. In fact, in the *Vickers* case, *supra,* it was reaffirmed. Many cases from this and other courts were reviewed in the *Vickers* case, and certain of our earlier cases limited to what had been precisely decided in them. In the *Vickers* case, which quoted extensively from other cases and authorities, we announced:

"Generally speaking, whether a bank becomes a simple agent for collection, an absolute owner, or a qualified owner, will depend on the circumstances surrounding the deal and the agreement between and the intention of the parties. Much the greater number and weight of authorities is to the effect that, where one brings a check or draft to his bank, and such check or draft is made payable to the bank or is unrestrictedly indorsed to it, and requests that the amount thereof be put to his credit subject to his private check, and the bank complies therewith, and nothing else is said or done, it will be conclusively presumed that the bank has become the unqualified and absolute purchaser and owner of the check or draft, and consequently the absolute and unqualified owner of any proceeds to be derived therefrom. . . . Of course, this rule would not apply where the bank pays or advances an amount materially less than the face of the check or draft *and*

*it is understood that the bank is to pay an additional sum when it has made collection."* (Italics ours.)

In that case, *Burton v. United States,* 196 U. S. 283, was quoted at some length, and among other things, as follows:

"The testimony of Mr. Brice, the cashier of the Riggs National Bank, as to the custom of the bank when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more."

And so, here: The restrictive clause on the bottom of the deposit slip in the case before us amounted to nothing more than that. That would be the legal right of the bank under our own cases. The deposit slip in the *Old National Bank* case, *supra,* contained the notice at the bottom:

"Items other than cash are received on deposit with the express understanding that they are taken for collection only."

The notice on the bottom of the deposit slip in this case is of no more effect than the one in that case. In that case, Gibson gave one White his check on the bank. White took this check to the Old National Bank, and the amount thereof was deposited to his private account in that bank. The deposit slip on which the check was listed contained the clause above recited. We held that the deposit so made was a conditional credit, and that the bank took the check not as owner, but for collection. White, however, presented his own check for the whole amount of his private account, which the bank paid. We held that, while the deposit in the first instance was a conditional credit, and the bank did not then become the owner of the check, yet when, later, the depositor presented his check for the

whole amount and the bank elected to and did pay it, the original relationship was changed and the bank became the owner of the check.

In this case, since the evidence shows that Moreland, president and treasurer of the Lumber Company, sent the check to Shives, president and manager of the Logging Company, for the operations of the Logging Company, and it was used for those purposes, appellant thereby came within the rule in the *Old National Bank* case of having created a new contract wholly superseding the previous conditional credit contract.

In *Scott v. McIntyre Co.*, 93 Kans. 508, 144 Pac. 1002, L. R. A. 1915D 139, the court approved this rule:

"If, notwithstanding such restrictive indorsements, advances are actually made to the depositor, the title passes."

See, also, *Citizens' State Bank v. Council Bluffs Fuel Co.*, 89 Iowa 618, 57 N. W. 444.

Appellant contends further that the deposit of the check was a special deposit for a special purpose, and cites cases governing special deposits. As said in *Washington Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 218 Pac. 232, 37 A. L. R. 611:

"The rule is that a deposit will be deemed general unless it is made special by contract, and in the absence of an agreement to the contrary, it will be presumed to be a general deposit and not special."

The rule is also there announced that the deposit is not special unless made so by the depositor.

No one testified in this case that the deposit was made in the bank as a special deposit for a special purpose, as in the cases cited by appellant.

Uhri, in whose name the deposit was made, testified that no arrangement was made with Shives other than the deposit should be made in the name of Uhri.

As to the liability of appellant as the depositee

of the fund, since it was established to be the fund of the principal debtor, the rule is stated in 12 R. C. L. 850:

"If the garnishee transfers during the pendency of the garnishment proceedings any of the property or funds in his hands belonging to the principal debtor, he does so at his peril and is in no wise relieved from liability to the creditor by such conduct, even though it may have been induced by a mistaken idea as to the effect of the writ."

See, also, *Cook v. Coleman,* 167 Mass. 414, 45 N. E. 913, 57 Am. St. 465; *Citizens' State Bank v. Council Bluffs Fuel Co., supra.*

We conclude that the judgment must be, and it is, affirmed.

TOLMAN, C. J., MITCHELL, MILLARD, and MAIN, JJ., concur.

