## No. 8721.

### PAINESVILLE NATIONAL BANK *v.* HANNAN ET AL.

1. BILL OF LADING—*Rights of Assignee.* The delivery of a bill of lading is a symbolic delivery of the goods. As between a bona fide assignee of a bill of lading, and a creditor who seeks to stop the goods in transit, the equity of the assignee prevails.
2. APPEAL AND ERROR—*Matter not Pleaded,* will not be noticed.
3. DAMAGES—*Expenses of Litigation.* Action for unlawful sale of the goods of plaintiff. Expenses of prosecution of the action are not recoverable.
4. ——. *Exemplary Damages,* denied.

*Error to Denver District Court, Hon. H. P. Burke, Judge.*

Messrs. DANNA & BLOUNT, Mr. RICHARD A. SMITH, for plaintiff in error.

Mr. GRANT L. HUDSON, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

THIS suit is to recover damages on account of the sale by Nisbet, as sheriff, of an automobile and equipment pursuant to a levy of a writ of attachment issued in a suit wherein Hannan, the other defendant herein, was plaintiff, against The Vulcan Manufacturing Company, of Ohio. At the conclusion of testimony of plaintiff, defendants moved a non-suit. The motion was allowed and the cause dis-

missed. Plaintiff brings the proceedings here for review on error. In the opinion the parties will be designated as in the trial court.

The essential facts are that Hannan, a dealer in automobiles in Denver, was a creditor of The Vulcan Manufacturing Company of Plainesville, Ohio, in the sum of $250.00, and while that company was so indebted to him he placed an order with it for the machine which he later seized under attachment. Prior to the receipt of his order that company had shipped the car in dispute to Chicago, consigned to the plaintiff bank, subject to the order of an automobile company of that city. A draft, payable to the bank, was attached to the bill of lading, but the Chicago firm neither paid the draft, nor accepted the car. Upon receipt of the order from defendant Hannan the car was re-consigned to the plaintiff bank, at Denver, subject to the order of Hannan with draft against him, payable to the order of the bank. When the automobile reached Denver Hannan attached it, as the property of the Vulcan Company, in a suit wherein he was plaintiff, and that company defendant. It was later sold by defendant Nisbet, as sheriff, despite the protest and claim of plaintiff, aserted from the time of the attachment levy, upon a judgment obtained in the attachment suit.

There is nothing in the record before us to overcome the proofs that the bank received the bill of lading either as security for money advanced to the Vulcan company, or in an outright purchase of the automobile. The only question is whether the bank may be regarded as the owner of the property covered by the bill of lading, at the time it was seized under attachment. The method followed by the Vulcan company and the bank, is of common use in transactions of this character. The status of parties who advance money upon bills of lading as security, or for the purchase of the property, has been frequently before the courts. In *Schmidt v. Bank,* 10 Col. App. 261, 60 Pac. 733, in speaking of the rights of the holders of bills of lading as col-

lateral, as against a creditor who attempts to stop the goods *in transitu,* the court at page 262 said:

"It is therefore true that as between a *bona fide* transferee for value of a bill of lading, and a creditor who seeks to stop the goods in transit the equity of the transferee must prevail."

One of the authorities cited in that opinion is *Beans v. Bank of Randall,* 146 U. S. 620, 36 L. Ed. 1107, 13 Sup. Ct. 186. In that case the bank advanced money to buy cattle, which were shipped to defendants. The bill of lading was given to the bank as security. Defendants sold the cattle and applied the proceeds upon an old account between themselves and the shippers of the cattle. In discussing the rights of the bank under such circumstances it was said at page 627:

"When the bill of lading was transferred and delivered as collateral security, the rights of the pledgee under it were the same as those of an actual purchaser, so far as the exercise of those rights was necessary to protect the holder. * * * A bank which makes advances on a bill of lading has a lien to the extent of the advances, on the property in the hands of the consignee, and can recover from him the proceeds of the property consigned, even though the consignor be indebted to the consignee on general account; and the consignee cannot appropriate the property or its proceeds to his own use in payment of a prior debt."

That the delivery of a bill of lading is a symbolic delivery of the goods was affirmed in *Merchants Exchange Bank v. M'Graw,* 76 Federal 930 (22 C. C. A. 622), where, at page 933, numerous authorities are cited in support of the following:

"There are numerous authorities which, in substance, declare that the delivery, by the owner of the goods, of a common carrier's receipt for them, as security for an advance of money with the intention to transfer the property in the goods, is a symbolic delivery of them, and vests in the person making the advance a special property in the goods, sufficient to enable him to maintain replevin or

trover, or other action at law, against another who attaches them upon a writ against the general owner."

In *First National Bank v. Mt. Pleasant Milling Co.,* 103 Iowa 518, 72 N. W. 689, the bank claimed an interest in two cars of wheat by virtue of a bill of lading. Defendant claimed the wheat under a writ of attachment. The court held:

"Bills of lading represent property, and when indorsed or assigned, operate as a symbolic delivery to the indorsee or assignee of the property covered threby. * * * The question here presented is not whether the indorsee takes the bill of lading free from all equities or defenses in the hands of the original holder, but whether he has a better title to the grain than an attaching creditor of the indorser. If A. should purchase a horse from B. and secures the delivery thereof upon a promise to pay for the same at some future time, he certainly has a better title than C. who attaches the horse as the property of B. after the delivery to A. So when the plaintiff in this case cashed the draft, and took the assignment of the bill of lading from the Commission Company, it secured a better title than the Milling Company, which attached the grain while in transit; and the fact that, when the grain was attached, it had not been called upon to make any direct advances to the Commission Company, is not in itself, of controlling importance. * * * If the bank had simply undertaken the collection of the purchase price as agent of the Commission Company, then the title to the grain remained in the latter company, and it was subject to attachment until delivered to and paid for by the Roller Company. But if the bank purchased the draft, and accepted the bills of lading as collateral security, or if it purchased the grain outright, and accepted the bills of lading as evidence of this purchase, or if, in consideration of the indorsement and delivery of the bills of lading, it made or agreed to make certain definite future advances, it acquired a title to the grain which could not be defeated by a subsequent attachment."

When a bank in good faith makes advances, whether as a purchaser or lender, and receives a bill of lading as security, it has a claim upon the property covered by the bill of lading, which is good as against the claim of a creditor of the shipper. No authorities have been, or can be, cited which controvert this proposition.

Defendants, however, rely upon section 2668, R. S., 1908, of the Statute of Frauds of this State, and insist that under it the sale of the automobile to the bank was void, for the reason that it was not followed by an immediate delivery, and an actual and continuous change of possession. Defendants did not plead the statute in the lower court, and even if properly pleaded it would have been a good defense, a question we do not decide, it cannot be invoked for the first time in this court on review. *Benjamin v. Matler,* 3 Col. App. 234, 32 Pac. 837; *Tynon v. Despain,* 22 Colo. 240, 43 Pac. 1039; *Hamill v. Hall,* 4 Colo. App. 290, 35 Pac. 927; *Hunt v. Hayt,* 10 Colo. 281, 15 Pac. 410. Upon the question of the Statute of Frauds as a defense in cases of this character, see *Cary v. Williams,* 47 Colo. 256, 107 Pac. 219, 135 Am. St. 219.

Neither the pleadings nor the facts warranted the introduction of testimony as to the expenses plaintiff incurred in the prosecution of this suit. Such expense is not a proper element of damage under the facts of this case. The action is not one in which exemplary damages are recoverable.

The judgment of the lower court is reversed and the cause remanded, with leave to the parties to amend their pleadings if so advised and for further proceedings in conformity with the views herein expressed.

Decision *en banc.*

Mr. Justice Scott not participating.