No. 9745.

THE UNION NATIONAL BANK OF FOSTORIA, OHIO, *v.* THE MAINES-HOUGH MOTOR COMPANY OF COLORADO.

Decided April 4, 1921.   Rehearing denied May 2, 1921.

Proceedings in garnishment.   Judgment for plaintiff.

*Reversed.*

1. BILLS AND NOTES—*Drafts—Ownership.* Where a company deposits drafts unconditionally with a bank, receives credit therefor and checks against the amount in the regular course of business, the bank becomes the owner of the fund, which is not subject to garnishment in a suit by a third party against the depositor.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. C. M. McCUTCHEN, for plaintiff in error.

Mr. J. W. KELLEY, for defendant in error.

MR. JUSTICE BAILEY delivered the opinion of the court.

THIS cause is here on writ of error to review a judgment of the District Court, wherein The Colorado State & Savings Bank, of Denver, as garnishee, is required to pay over to The Maines-Hough Motor Company $2,900.00, money which The Union National Bank of Fostoria, Ohio, claims. The parties are here designated as in the court below.

The Allen Motor Company, of Fostoria, Ohio, the principal defendant, drew two drafts upon The Miller-Ray Motor Company, of Denver, in payment for automobiles which it had sold to the latter company. The drafts were for $4,586.30 and $4,949.12, respectively, with bills of lading attached. They were drawn by The Allen Motor Company; the Miller-Ray company was the payor and The Union National Bank of Fostoria the payee. The drafts

were deposited by the Allen company with The Union National Bank as so much cash. The company took credit for the same, and at once checked against it in the regular course of business. The drafts were duly forwarded by the Ohio bank to The Colorado State and Savings Bank, Denver, where they were promptly paid by the Miller-Ray company.

The Maines-Hough Motor Company, a Denver concern, sued out an attachment in aid of a suit on a claim by it against The Allen Motor Company and garnisheed the Colorado bank. That bank answered that it had no funds of the company. The Union National Bank was then made a party by order of court, another garnishment issued, and the proceeds of the drafts were impounded.

The Union National Bank then entered a special appearance and moved to discharge the attachment, which motion was denied. It then filed a traverse of the attachment, and after a hearing the attachment was sustained. Judgment by default went against The Allen Motor Company, in the sum of $2,900.00. The answers of the garnishee set up that the funds in its possession were the property of The Union National Bank, and these answers were traversed by plaintiff. After a full hearing the court instructed the jury to find the issues for plaintiff, and The Colorado State and Savings Bank was adjudged to pay over to The Maines-Hough Motor Company the amount of its judgment against The Allen Motor Company. That judgment is now here for review.

In determining the case it is necessary to pass upon but one question, namely, whose money is it which is impounded by the garnishment? The testimony clearly furnishes the answer. Therefrom it conclusively appears that The Allen Motor Company sold the drafts in question unconditionally to The Union National Bank; the entire proceeds therefrom were immediately passed to the credit of the company on the books of the bank, which were at once checked against by the company in the usual and ordinary course of business. There is not a syllable of testimony

in the record to controvert this positive and direct proof. Indeed, the record testimony introduced shows, beyond any possibility of doubt, that the money in question is the money of The Union National Bank, and that The Allen Motor Company has no more claim upon, or interest in, it than has the traditional "Man in the Moon." Upon the facts of the case as established by the undisputed proofs, all judicial authority supports this conclusion. No precedent can be found anywhere which even squints the other way. Primarily our decision rests upon the authority of common justice and common sense. In principle the case of *Painesville National Bank v. Hannan, et al.,* 64 Colo. 301, 171 Pac. 364, and authorities cited, clearly upholds the views here announced. So also does *First National Bank of Blanchester v. Stengel,* 169 N. Y. Supp. 217, just called to our attention by counsel for defendants in error, who appears to think that this case announces a contrary doctrine, but manifestly it does not. A paragraph in this opinion, supported by facts therein stated identical with those in this case, is squarely in point, directly applicable and which, as we think, unanswerably upholds and approves our decision, is as follows:

"It is a well-understood rule of law that a deposit of a draft or check in the ordinary course of business, the depositor receiving a credit against which he can draw, has the effect of transferring title. The rule is based upon the reason that the check or draft is deposited and received by the bank as so much cash, which immediately becomes the property of the bank. The transaction is a sale. The banker has become absolutely responsible to the depositor. With such a relation existing, the bank, in case of the dishonor of a deposited check or draft possesses no right to charge back the depositor's account with the amount of the dishonored check or draft. Its sole recourse is to hold the depositor to his liability upon his contract of indorsement. In order for the rule to apply, the deposit must be a naked deposit, and the credit given must be unconditional and unrestricted and without any special understanding

or general usage of business obtaining in the locality which might color the transaction. A clear statement of the rule is given in the leading case of *Taft v. Quinsigamond National Bank,* 172 Mass. 363, 364, 365, 52 N. E. 387, often quoted with approval by the courts of this state (*Heinrich v. First Nat. Bank of Middleton,* 219 N. Y. 1, 5, 113 N. E. 531, L. R. A. 1917A, 655."

It is urged, however, that the transaction did not constitute a sale because the cashier of the motor company failed to show authority to make it. This contention is wholly without merit. The company ratified its cashier's act by accepting the proceeds of the sale and that eliminates this question. Moreover, plaintiff, an outsider, is in no position to object on this ground.

It is also contended that no sale took place because, as the bank claims, had the Miller-Ray company failed to pay the drafts, it would have the right of action against the Allen company as drawer of the bills. The learned trial judge held that this fact showed conclusively that there was no sale. This position is unworthy of serious consideration. The drafts were negotiable instruments, subject to the law merchant, and clearly had the drawee failed to pay them The Union National Bank would have had an action against the maker of the drafts to recover back the purchase price which it had paid that company for them. The court seems to have entirely overlooked the character of the drafts as commercial paper. It appears that plaintiff had no claim against The Union National Bank at all, has not now and never has had any contractual relations with it whatsoever, and manifestly, therefore, had no right to impound its money under garnishment.

The judgment is reversed and the cause remanded, with directions to dismiss the attachment as to The Union National Bank, to enter an order releasing the money garnished, and directing the garnishee to hold the same subject to the order of The Union National Bank.

Judgment reversed and cause remanded with directions.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE BURKE, concur.