## No. 12,304.

### BROMFIELD *v.* COCHRAN ET AL.

Decided December 9, 1929.

Mr. A. A. LEE, Mr. BENJAMIN GRIFFITH, MR. ARTHUR E. ALDRICH, for plaintiff in error.

Mr. IRA C. ROTHGERBER, Mr. WALTER M. APPEL, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

GEORGE A. Stahl, as receiver of the Broadway National Bank brought suit in the county court of the City and County of Denver against Cochran & Cochran, copartners, the Rockwell Investment Company and the Parker Realty Company, corporations, to recover $652.41. The complaint charged that the Rockwell Investment Company and the Parker Realty Company, for a valuable consideration made, executed, and delivered a certain check drawn on the International Trust Company, dated December 16, 1925, and payable to Horace B. Cochran and James M. Cochran in the sum of $1,497.30; that said check was endorsed unconditionally by the payees and thereafter deposited in their account at the Broadway National Bank, payees using a deposit slip which contained the following provisions: "All checks, drafts and other items drawn on or payable at other banks are offered for deposit to, and received by, this bank as a forwarding agency  *  *  *  and will be credited provisionally subject to final cash payment, the bank reserving the right to decline payment of checks drawn against such credits"; that said amount was credited to the account of defendants Cochran and Cochran who thereupon were permitted to draw and drew against said check, sums aggregating $652.41 and that the bank became thereby the owner thereof. Thereafter payment upon said check was stopped, and this suit was instituted to recover the amount thus paid out, $652.41, together with interest at 8 per cent from December 16, 1925. Cochran and Cochran failed to appear and judgment was entered against them in the county court.

The defendants, the Rockwell Investment Company and the Parker Realty Company, answered admitting the execution and delivery of said check and that payment thereof had been stopped because of alleged fraud perpetrated by the payees upon the makers. By stipulation, the allegations contained in the complaint and answer, for the purposes of the trial, were admitted as if proven. The county court thereupon entered judgment for the de-

fendants, from which plaintiff appealed to the district court. Upon a trial there, under a similar stipulation, judgment was again rendered in favor of the defendants, which the plaintiff now seeks to review, contending that the court erred in failing to render judgment for the plaintiff.

From the foregoing, it is apparent that the sole question for determination of this court is: Was the Broadway Bank the owner of said check or merely an agent of the depositors for collection. If title to the check passed to the bank, it should recover, otherwise not.

We have held that where a check is drawn on one bank and unconditionally deposited in another, the latter becomes merely an agent of the depositor and title does not pass to said bank; and further that, under such circumstances, if the bank of deposit extends credit and permits the depositor to withdraw the amount of the check, the bank becomes the owner thereof. See *Union National Bank v. Motor Company,* 70 Colo. 132, 197 Pac. 753; *Manatee Bank v. Fruit Company,* 70 Colo. 342, 201 Pac. 560; *First National Bank v. Fruit Company,* 70 Colo. 345, 201 Pac. 561; *First National Bank v. Fleming State Bank,* 74 Colo. 309, 221 Pac. 891 and *Scully v. Denver National Bank,* 76 Colo. 227, 230 Pac. 610.

Defendant corporations contend that the provisions contained in the deposit slip aforesaid are controlling and that thereby the bank became merely an agent of the depositor and that the subsequent extension of credit to the depositor and withdrawal of funds did not change the contract of deposit so as to then pass title to the bank. In support thereof, the Fleming case, supra, is cited. We are of the opinion that this case is not decisive of defendants' claims. Therein, a check for $1,000 was drawn on another bank and deposited by the payee in the plaintiff bank without endorsement but with directions that his endorsement be supplied if plaintiff was satisfied that the check was good and that the proceeds thereof be remitted to the Hartman Bank for the credit of one Dean

Doyle. Drawee bank telegraphed the plaintiff that the check would be honored, whereupon the payee's endorsement was supplied and the check was forwarded to the drawee bank and payment refused. Upon notice thereof, payee ordered the bank of deposit to again send the check for collection which was done and it was again dishonored. Whereupon, the account of the payee was charged the amount of the check. Suit was brought by the plaintiff against the acceptor for failure to pay after demand upon the theory that the transaction was a sale and not a deposit for collection. The trial court found that the plaintiff, having charged the amount of the check back against the depositor's account thereby received payment on account of money advanced on said check and was therefore not the real party in interest; and that the facts disclosed that neither the depositor nor the plaintiff intended that the transaction should operate as a sale by the depositor to the plaintiff bank. It was held that the judgment of the lower court was right upon either ground. On the question of sale, the rule is enunciated as follows (p. 312):

"When, as here, a check is endorsed in blank by the payee, and placed in a bank other than the one on which it is drawn, whether such a transaction constitutes a sale of the check to the first bank or is merely a deposit for collection, depends upon the facts and circumstances attending the transaction. If it is a sale, title passes to the bank in which the deposit is made. If it is for collection only, or the check is deposited as a check, the relation of debtor and creditor does not arise, and the check remains the property of the depositor, and is in the hands of the bank as his agent for collection, with title still in the payee, and not in the endorsee." Citing cases.

"In this state the general custom and understanding is, that when a customer deposits in his bank checks drawn on another bank, they are received for collection, and are charged to the customer's account if dishonored. Some banks, by way of precaution, print upon their deposit slips

notice to this effect. The banks generally, in the absence of special notice, regard such transactions as deposits for collection, and even when credited to a checking account, the right recognized by the law merchant to charge back to the account a dishonored check, is exercised. *Town of Manitou v. First Nat. Bank of Colorado Springs,* 37 Colo. 344, 356, 86 Pac. 75.''

██ Applying these principals to the instant case, we must necessarily hold that the intention of the parties is controlling; that pursuant to the provisions of the deposit slip, plaintiff bank, at the time of deposit, was merely an agent to collect; that, when it credited the amount of said check to the payees' account and thereupon paid to them $652.41 on account thereof, it thereby elected not to exercise the right to decline payment thereof as provided by the terms of said deposit slip; and that the payment so made and the receipt thereof by the depositor evidenced an intention of the parties that a sale of said check be consummated and the bank thereby became the owner of said check.

██ Our conclusions herein are fortified by all of the Colorado cases hereinabove set forth. Defendants authorized the circulation of their negotiable instrument in the commercial world and thereby represented that it was their valid and binding obligation to pay the amount thereof to any innocent party who held the same for value and without notice of any claimed infirmity. It would be unjust and inequitable under all the circumstances in this case to hold that the plaintiff bank, an entirely innocent party, should suffer a loss of $652.41. Certainly, in all fairness, as between plaintiff bank and defendants, the loss should fall upon the defendants which caused it to exist.

The judgment of the lower court is therefore reversed with directions to enter judgment for the plaintiff in the sum of $652.41 together with interest thereon at the rate of 8 per cent per annum from December 16, 1925, to date.

MR. JUSTICE BUTLER not participating.