No. 12,143.

FEDERAL RESERVE BANK OF KANSAS CITY *v.* FIRST NATIONAL BANK OF DENVER.
(286 Pac. 116)

Decided March 3, 1930.   Rehearing denied March 24, 1930.

Messrs. Lewis & Grant, Mr. H. G. Leedy, for plaintiff in error.

Messrs. Hughes & Dorsey, Messrs. Benedict & Phelps, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

For convenience plaintiff in error is hereinafter referred to as defendant; defendant in error as plaintiff; the Citizens State Bank of Orway, Colorado, as the Ordway State Bank; the receiver of said Citizens State Bank of Ordway as the receiver; the First National Bank of Ordway, Colorado, as the Ordway National Bank; the Central Savings Bank and Trust Company of Denver, Colorado, as the trust company; the State Bank Commission of Colorado as the commissioner; John Amicon Brother and Company of Ordway, Colorado, as the Amicon company; The Hallack and Howard Lumber Company of Denver, Colorado, as the lumber company; and Federal Reserve District No. 10 as District No. 10.

Plaintiff sent certain checks to defendant for collection which was not made. Alleging that this business was

improperly handled to its damage in the sum of $8,-851.46, it brought this action to recover that amount with interest. The cause was tried to the court, which found for plaintiff in the sum of $7,528.40. To review the judgment entered accordingly, defendant prosecutes this writ.

Defendant is organized under the Act of Congress creating federal reserve banks. Plaintiff and the Ordway National Bank are both national banks, citizens of Colorado, and members of defendant.

The Amicon Company had a checking account in the Ordway State Bank with a balance therein to its credit of over $8,000. It drew thereon to the lumber company nine checks for various sums, totaling its balance. September 27, 1921, the lumber company indorsed these checks and deposited them with plaintiff for collection. The deposit slip used for that purpose contained the following conditions: ''This bank will observe due diligence in its endeavor to select responsible agents, but will not be liable in case of their failure or negligence or for loss of items in the mail. Checks on this bank will be credited conditionally; if not found good at the close of business on day deposited they will be charged back to the depositor and the latter notified. All items are credited subject to final cash payment and are handled at the risk of depositor.'' Plaintiff credited them to the checking account of the lumber company and sent them to defendant for collection. Defendant thereupon indorsed them and sent them for payment to the Ordway State Bank, on which they were drawn. Said bank received them on September 29, and on October 5, 1921, issued in payment thereof its draft on the trust company, stamped the checks ''Paid,'' returned them to the Amicon Company and charged that company's account with their face. Said draft on the trust company was sent by mail to defendant and received by it October 6, presented to the trust company for payment, and by it dishonored. October 8, the Ordway State Bank was closed by the commis-

sioner. Three weeks later defendant notified plaintiff of this failure of the collection. Plaintiff thereupon notified the lumber company and charged the paper back to it. The checks, however, remained in possession of the Amicon Company. All interest of the lumber company has been assigned to plaintiff. Defendant thereafter filed with the commissioner its claim, based upon the dishonored draft above mentioned, and has received dividends thereon.

The negligence specifically charged to defendant, and whereon it is alleged its liability rests, consists in: (1) Forwarding said checks direct to the bank on which they were drawn, instead of collecting them through a third party; (2) surrendering said checks for the draft of the Ordway State Bank instead of demanding payment in cash; (3) failing to collect within a reasonable time or notify plaintiff of that failure. A demurrer to the complaint for want of facts was overruled.

Aside from essential denials in the answer, the second defense pleaded a banking custom to remit collections by draft instead of cash; also the provisions of "General letter No. 233" of defendant, issued under authority of an Act of Congress, and regulation J, series of 1920, of the Federal Reserve Board; all of which, it is alleged, were a part of its contract with plaintiff and justified its conduct. A third defense asserted that plaintiff was not the real party in interest, because, not being the owner of the Amicon Company checks, it had lost nothing by reason of their cancellation uncollected. This was the contention upon which the demurrer to the complaint was based. A demurrer for want of facts was sustained to said second and third defenses.

The cause was tried to the court without a jury. Findings were for plaintiff, and to review the judgment thereupon entered, defendant prosecutes this writ.

Plaintiff first brought suit in the United States District Court for Colorado. \The history of it there will be found in *First Nat. Bank v. Federal Reserve Bank,* 283

Fed. 700, and Id. 6 Fed. (2d) 339. Meanwhile, by a United States statute and its construction (*Federal Land Bank v. U. S. Nat. Bank*, 13 Fed. [2d] 36), the United States District Court lost jurisdiction, and dismissed the cause without prejudice. Plaintiff thereupon filed the present action.

For the purpose of further consideration of this cause we will treat the second defense as standing and, in so far as material, admitted.

In sustaining the demurrer to the complaint in the United States District Court for Colorado, on August 16, 1922, Judge Symes did so on the ground that the lumber company and defendant "are entire strangers, and the former, according to the rule in the federal courts and the courts of Colorado, has no right of action against the defendant. * * * 'The assignor having no right of action, its assignee can be in no better position." *First Nat. Bank v. Federal Reserve Bank*, 283 Fed. 700.

February 18, 1924, a cause reached final judgment which involved the liability of the Federal Reserve Bank of Richmond, Virginia, on a check drawn in North Carolina, on a bank in that state, first deposited for collection with a bank in Florida, and passing thence through two others to said Richmond bank, which sent it for collection to the drawee, where it was paid with paper thereafter dishonored. In that cause the Supreme Court of the United States held that the rule announced by Judge Symes, supra, was the rule in the federal courts, but that it "may, of course, be varied by contract, express or implied," and that a Florida statute, adopting the contrary rule, was written into the contract and controlled "the relations of the drawee to the initial bank of deposit." *Federal Reserve Bank v. Malloy*, 264 U. S. 160, 44 Sup. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261.

Assuming that "the Richmond bank was not negligent in sending the check directly to the bank on which it was drawn," the court therein further held that if a bank receiving commercial paper for collection, "accepts

the check of the party bound to make payment and surrenders the paper, it is responsible to the owner for the resulting loss," citing cases. "It is unnecessary to cite other decisions since they are all practically uniform." The court then considers the defenses of custom, and the regulation of the Federal Reserve Board relied upon in the instant case, and so disposes of both as to make them entirely untenable here. The language of Mr. Justice Sutherland, author of that opinion, cannot be improved upon, and its repetition would be superfluous. Citation is sufficient.

█ Thereafter, and on May 25, 1925, this controversy, as framed in the federal forum, reached the Circuit Court of Appeals of the Eighth Circuit, which held that the contract between the lumber company and plaintiff, as disclosed by the deposit slip, had the same effect as given by the United States Supreme Court to the Florida statute in the Malloy case, supra, and that no want of knowledge of the terms of that contract could avail this defendant because "its duties in the premises were exactly the same whether it was acting as agent of the plaintiff or of the lumber company, and it can make no difference to defendant whether it is called upon to answer for its neglect of duty" to one or the other. *First Nat. Bank. v. Federal Reserve Bank,* 6 Fed. (2d) 339.

Twelve days before that opinion was handed down, the Act of Congress depriving the federal courts of jurisdiction and later resulting in the dismissal of the cause therein, had become effective, hence, strictly speaking, the judgment is not authority, but we approve its reasoning and conclusions.

█ Defendant here says all this is answered by *City of Douglas v. Federal Reserve Bank,* 271 U. S. 492, 70 L. Ed. 1051, wherein the court said: "When paper is endorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes owner of the paper, and in making the collection is not

the agent for the depositor." Standing without qualification that language would reverse the Malloy case, which, however, is cited in the opinion and clearly approved. The statement is, of course, intended to apply only in the absence of special contract. The court thereupon takes up the contention of special contract, which therein rests only upon the following words contained in the pass book: "All out of town items credited subject to final payment," and holds that those words "did not vary the legal rights and liabilities incident to that relationship [of indorser and indorsee], unless it dispensed with notice of dishonor to the depositor." Hence, we think this authority inapplicable.

That all this is entirely consistent with our own declarations on the subject, so far as this court has spoken, seems clear.

"Whether such a transaction constitutes a sale of the check to the first bank or is merely a deposit for collection, depends upon the facts and circumstances attending the transaction." *First Nat. Bank v. Fleming State Bank,* 74 Colo. 309, 221 Pac. 891.

"Applying these principles to the instant case, we must necessarily hold that the intention of the parties is controlling." *Bromfield v. Cochran,* 86 Colo. 486, 283 Pac. 45.

We conclude, therefore, that the demurrer to the complaint was properly overruled, and that to the third defense properly sustained.

■ Of the defenses to the charge of negligence, it remains only to notice further those of custom and "General Letter No. 233," although both, we think, are answered by the authorities cited. Since the letter does not provide for collection save in cash, it is, if otherwise valid, immaterial here. Assuming the custom, it is no defense to negligence. *Pinkney v. Kanawha Valley Bank,* 68 W. Va. 254, 69 S. E. 1012, 32 L. R. A. (N. S.) 987, Ann. Cas. 1912B, 115. It is also therein held that if the collecting bank has reason to doubt the stability of

the drawee, its diligence should be commensurate with that information; that the general rule is that direct transmission to the drawee is negligence; and that if thereby the check, unpaid, is lost to the customer, he has an action in assumpsit against the collector for the full amount thereof.

██ ██ We think, under the circumstances here disclosed, each of the acts charged; i. e., forwarding direct to the bank on which the checks were drawn, accepting payment in its draft instead of cash, and nine days' delay in action, constituted negligence. That conclusion is strengthened when we consider the three, as we should, collectively. But when we add to these that the Ordway State Bank belonged to a class among which there was at this time known weakness; that the items were, for it, large; that defendant had a member bank in the same small town to which the collection might have been sent; and that the letter of transmittal contained, among others, the following instructions: "Do not hold any items, but protest all items over $10 not promptly honored as drawn and return immediately. * * * Wire nonpayment of items $500 or over"; all of which were violated; and there seems to us no remaining doubt of defendant's negligence and liability. Both, we think, were acknowledged when defendant filed with the commissioner its claim based upon the dishonored draft.

The judgment is affirmed.

Mr. Justice Campbell not participating.