**COLORADO NAT. BANK OF DENVER v. NEWTON. ***

**No. 1295.**

Circuit Court of Appeals, Tenth Circuit.
Dec. 23, 1935.

Rehearing Denied Jan. 13, 1936.

*Writ of certiorari denied 56 S. Ct. 596, 80 L. Ed. —-.

Walter W. Blood, of Denver, Colo. (G. C. Bartels, Frank N. Bancroft, and Arthur H. Laws, all of Denver, Colo., on the brief), for appellant.

Henry E. Lutz, of Denver, Colo., for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

On November 9, 1934, M. E. Traylor and Company, a Colorado corporation, filed and presented to the court below its petition, and thereon it was adjudicated bankrupt on that day. Later appellant presented to the referee in bankruptcy its claim consisting of a promissory note given by the bankrupt for $9055, averring that certain certificates for shares of stock in various corporations, bonds issued by various corporations and promissory notes secured by mortgage had been delivered and pledged to appellant to secure the payment of said note. The referee allowed that claim as secured by said collateral.

Appellant presented two additional claims, one for $254.20 and the other for $1986.71, as claims secured by the same collateral that was pledged with the note. The agreement in that respect, which was appended to the note and signed by the bankrupt, is this:

"To secure the payment of this note and of any other liability or liabilities or obligations of the undersigned to the holder hereof, due or to become due, or whether now existing or hereafter contracted, the undersigned has transferred, pledged and delivered to said The Colorado National Bank of Denver, the following property, to-wit: (General character of the securities pledged is here described); and the undersigned agrees that, upon breach of any of the promises herein contained, or upon failure to pay any of said other liabilities or obligations, when due, the holder hereof may" sell the pledged property and apply the proceeds in payment of said indebtedness.

The referee found:

"On November 9th, 1934, at 10:15 A. M., when the petition in bankruptcy was filed, Easton owed the claimant-bank $254.-20; and on that date Investment Managers, Inc., owed the claimant-bank $1986.-71."

Those amounts asserted by appellant as secured claims against the bankrupt arose in this way: As to Easton, who had a checking account with the bank,—he owned certain securities in the custody of appellant bank which he had agreed to sell to the bankrupt for $310.24, and on November 8, 1934, he authorized the bank to deliver those securities to the bankrupt, take the bankrupt's check for the purchase price, and credit the same to his checking account, which it did on that day. On the morning of the next day the Denver Clearing House met at 9:00 o'clock, and this check was presented for clearance. The Denver National Bank on which it was drawn refused to accept it for payment, but appellant bank was not notified that it had been dishonored until about 2:00 P. M. on November 9th. The procedure in handling this check for payment was the usual one in handling such items by the Denver banks. When appellant bank re-

ceived notice that payment of the check by the Denver National Bank had been refused, it charged the amount of the dishonored check to Easton's account. Easton had given checks on appellant bank on the 8th and 9th of November in such amounts that his account was then overdrawn to the amount of this claim. $254.20.

Investment Managers, Inc. had a checking account in appellant bank. On November 7, 1934, the bankrupt gave its check to Investment Managers, Inc. drawn on the Denver National Bank for $3090.79. On November 8, 1934, the bankrupt gave it two other checks on the Denver National, one for $1116.70 and one for $14.94. In the afternoon of November 8, 1934, these three checks were deposited in appellant bank, each of which had this endorsement, "Deposit Acct. Investment Managers, Inc." Each check was credited to Investment Managers, Inc. checking account. These checks given to Investment Managers, Inc. followed the same course as the check that was credited to Easton's account, with the same result. Payment on all of them was refused by the Denver National, and when appellant received notice of their dishonor on the afternoon of November 9th and charged them back, the checking account of Investment Managers, Inc. had been overdrawn to the amount of the claim, $1986.71, large amounts having been checked out by Investment Managers, Inc. by checks payable to the bankrupt and deposited by bankrupt to its credit in the Denver National. The referee, and District Judge on certification, each held that no liability of the bankrupt to appellant bank resulted from any of these transactions; that the bank took the checks for collection only. But the referee further found that the bank "permitted Investment Managers, Inc. and Easton to draw against said checks prior to their collection." The District Judge also found that the bank permitted both parties to draw against the checks.

■ It is argued here that the bank was only the agent of Easton and of Investment Managers, Inc. for collection, never acquired title to or interest in any of said checks, and the only liability to it as the result of the transactions was that of Easton and Investment Managers, Inc. for their respective overdrafts. There were deposit slips used with the deposit of the checks. Printed thereon was this:

"All deposits are accepted for collection only and credited subject to final cash payment and are handled at risk of depositor. Credit is given conditionally, this bank reserving right to charge back to depositor all unpaid items or returns therefor which are unpaid." * * *

The adjudications established that whatever the formal statements may be on a deposit slip, if all the facts connected with such transaction and the circumstances under which it was made clearly convince that it was the intention of the parties that the depositor might check against the amount so deposited and he does so to the loss of the bank, title to the check thereupon passes to the bank and the drawer is obligated to it therefor, the depository bank thus having acquired the rights of an endorsee. City of Douglas v. Federal Reserve Bank, 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051; Burton v. United States, 196 U.S. 283, 297, 25 S.Ct. 243, 49 L.Ed. 482; Equitable Trust Co. v. Rochling, 275 U.S. 248, 48 S.Ct. 58, 72 L. Ed. 264; Latzko v. Equitable Trust Co., 275 U.S. 254, 48 S.Ct. 60, 72 L.Ed. 267; Ashley State Bank v. City Nat. Bank (C. C.A.) 32 F.(2d) 166; Bromfield v. Cochran, 86 Colo. 486, 283 P. 45, 68 A.L.R. 722; Old Nat. Bank v. Gibson, 105 Wash. 578, 179 P. 117, 6 A.L.R. 247; Vickers v. Machinery W. & S. Co., 111 Wash. 576, 191 P. 869; Bassett v. Mechanics' Bank, 117 Conn. 407, 168 A. 12; Jefferson Bank v. Merchants R. Co., 236 Mo. 407, 139 S.W. 545; Bath Nat. Bank v. Ely N. Sonnenstrahl, Inc., 249 N.Y. 391, 164 N.E. 327; McAuley v. Morris Plan Bank, 155 Va. 777, 156 S.E. 418.

The trustee in his amended objections to the allowance of these two claims says that appellant bank has no provable claims against the bankrupt estate (section 63, Bankruptcy Act, as amended (11 U.S.C.A. § 103); that the claims are not permitted as secured claims by section 67 of said act (11 U.S.C.A. § 107); and that to allow said claims as secured would be contrary to the terms of said act.

■ The record contains no proof as to when appellant bank first learned that the petition in bankruptcy had been filed, but much weight seems to be attributed by the trustee to the fact that the president of the bankrupt had a conversation with an

assistant-cashier of the bank during the forenoon of November 8th in which he stated to the cashier that bankruptcy was impending, but did not state when the proceedings would be initiated. No other facts than those that have been stated seem to be relied on by the trustee to sustain his objections to the claims. Clearly, we think, there is no merit to the objection that appellant did not have a provable claim at the time of bankruptcy. The finding of the referee quoted supra refutes the contention, as do the facts in the case. There is no evidence of fraud on the part of anyone in receiving and handling the four dishonored checks. By the terms of the pledge agreement attached to the note the pledged securities in the hands of the bank covered the dishonored checks. There is no contention that the lien thus created was not a valid lien under the local law, and it was saved by subsection (d) of section 67 of the Bankruptcy Act (11 U.S.C.A. § 107 (d):

"Liens given or accepted in good faith and not in contemplation of or in fraud upon the provisions of this title, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by anything herein."

Colorado law does not require that a contract pledging chose in action or other personal property as security for a debt must be recorded where the pledged property is delivered to and held by the creditor. The statement of the Supreme Court in Thompson v. Fairbanks, 196 U.S. 516, 526, 25 S.Ct. 306, 310, 49 L.Ed. 577, is applicable:

"Under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or encumbrance of the property which is void as against the trustee by some positive provision of the act."

See, also, Beacon Trust Co. v. Dolan (C.C.A.) 27 F.(2d) 247; Van Iderstine v. National Discount Co., 227 U.S. 575, 33 S. Ct. 343, 57 L.Ed. 652; Van Iderstine v. National Discount Co. (C.C.A.) 174 F. 518; Coder v. Arts, 213 U.S. 223, 29 S. Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Coder v. Arts (C.C.A.) 152 F. 943, 15 L. R.A. (N.S.) 372.

Reversed and remanded with directions to allow the claims as secured by the collateral attached to the note insofar as that collateral was not needed in payment of the note, the remainder, if any, as a general claim.