GEORGE J. BASSETT, STATE BANK COMMISSIONER, *vs.*
THE MECHANICS BANK (JAMES E. WHEELER,
RECEIVER).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 14th—decided August 15th, 1933.

*Huntington T. Day,* for the claimant, The Arthur M. Rosenberg Company.

*Robert C. Stoddard,* with whom was *S. Fred Wetzler,* for the receiver.

*H. Rogers Jones,* Assistant Attorney-General, with whom, on the brief, were *Warren B. Burrows,* Attorney-General, and *Ernest L. Averill,* Deputy Attorney-General, for the State Bank Commissioner.

HINMAN, J. This is an application by the receiver of the defendant bank for advice with reference to a claim of The Arthur M. Rosenberg Company, hereinafter called the claimant, for preference in the payment to it of the proceeds of the collection of certain checks deposited by it in the bank. The facts stipulated for the purposes of this reservation include the following: The claimant is a corporation located in New Haven and on June 9th, 1932, was and had been for a long time a depositor of the defendant, The Mechanics Bank, and it had been its practice to carry on deposit a substantial balance. On June 3d, 4th, 6th, and 7th, 1932, it deposited sundry checks and cash, the checks before deposit being indorsed "Pay to the order of The Mechanics Bank." The deposit slips on which the items were listed contained, at the bottom a printed statement "All checks credited are subject to payment." Among the checks so deposited were those, amounting to $3780, which are the subject of the present claim. Each of these checks was, on the date it was deposited, credited to the account of the claimant, indorsed by the bank, "Pay to the order of any Bank, Banker or Trust Co. All prior endorsements guaranteed," and forwarded to one of its correspondent banks. The proceeds of the checks have been collected by the various correspondent banks, credited to the deposit account of the Mechanics Bank, and are now in the possession of the receiver.

On the opening of business on June 8th, 1932, the books and records of the bank showed that the claimant's deposit balance amounted to $11,487.73. On that day there was a very serious run upon the bank, and early in the forenoon a representative of the claimant presented for certification a check for $8000 drawn by it, payable to a New York bank. The paying teller to whom the check was presented for certification informed the representative that while the books showed the deposit balance above stated, about $7500 of this amount represented collected checks, and about $4000 represented uncollected checks, and that he could not certify the $8000 check without the consent of the cashier. The representative then attempted to take the check to the cashier but the latter was busy and the check was not presented to him, and he was not asked to consent to the certification. Instead of waiting to see the cashier, the representative subsequently presented to another teller for certification another check for $7500 and this was certified and the claimant has received the proceeds of it. The bank had previously always honored the checks of the claimant whether drawn against collected or uncollected checks.

On June 9th, before the defendant bank opened for business, the bank commissioner issued a restraining order against it and it suspended and failed to open for business. On June 21st a temporary receiver was appointed and qualified, and continued to act as such until December 16th, 1932, when he was appointed permanent receiver. On February 24th, 1933, the Superior Court, upon application of the receiver, passed an order allowing and classifying the claim of The Rosenberg Company as a deposit, under subdivision (3) of § 3935 of the General Statutes. Thereafter the claimant made application to the court pray-

ing that its claim be allowed as entitled to priority or preference and to payment in full. Further facts deemed material will be stated in the course of the discussion. The gist of the questions upon which the advice of this court is requested is whether any or all of the sum of $3780 representing proceeds of the checks should be classified and treated as a deposit within the meaning of subdivision (3) of § 3935 of the General Statutes or some or all of the claim be treated as entitled to preference over deposits and to payment in full. Section 3935 of the General Statutes is printed in a footnote.

The common-law rule is that the depositor of a check or draft for collection with an insolvent bank or one which becomes insolvent before collection is entitled to the paper or its proceeds, as against the bank, since no title passed to it except as bailee or agent for collection, and the depositor may claim it. The money received upon collection of such paper subsequent to insolvency belongs to the owner of the paper, and can be recovered in full if it can be traced to the particular paper. But where a general deposit is made before insolvency there can be no recovery in preference to other general depositors. Where checks are indorsed and deposited in a bank as cash or its equivalent they become the property of the bank and on insolvency of it the depositor cannot follow them or their proceeds. *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 203, 90 Atl. 369; *Bassett* v. *West Haven Bank & Trust Co.*, 116 Conn. 609, 165

---

Sec. 3935. MARSHALING OF CLAIMS. The avails of the property of any bank or trust company in the hands of a receiver or receivers shall be appropriated ratably to the payment of: (1) The charges and expenses of settling its affairs; (2) the circulating notes, if any; (3) all deposits; (4) all sums which have been subscribed and paid in for its stock by the state or the school fund; (5) all other liabilities; and the surplus shall be distributed among the stockholders.

Atl. 895; *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 31, 160 Atl. 60; 5 Michie, Banks & Banking, § 35, p. 83.

Therefore, a consideration decisive of the right of the present claimant to preference over general deposits is whether the checks in question became the property of the bank when they were deposited in it, or are to be regarded as merely having been taken by the bank for collection. The question presented is one with which this court hitherto has not been called upon to deal directly. Decisions in other states are extremely numerous and disclose considerable conflict, in some cases basic and irreconcilable, in others growing out of differences in the facts. However, we have no difficulty in recognizing and adopting the rule, which is supported by the decided weight of authority, that where paper is indorsed unrestrictedly and deposited in the usual course of business with a bank which gives immediate credit to the depositor for the amount thereof, with the right to draw thereon irrespective of whether the paper has been collected, such deposit prima facie operates to transfer title to the bank so that the relation between the bank and the depositor becomes that of debtor and creditor, as distinguished from that of bailor and bailee or principal and agent for collection. 5 Michie, Banks & Banking, § 32a, p. 59 *et seq.;* 2 Morse, Banks & Banking (6th Ed.) §§ 573, 577; 3 R. C. L. p. 524 *et seq.* Cases in great number supporting and adopting this view are cited in 5 Michie, p. 59 *et seq.*, and are collected and reviewed in notes, 11 A. L. R. 1060, 16 A. L. R. 1084, 42 A. L. R. 497, and 68 A. L. R. 731 *et seq.* Reference is made thereto in lieu of specific citations beyond the following cases and others hereinafter mentioned. *Burton* v. *United States,* 196 U. S. 283, 25 Sup. Ct. 243; *Taft* v. *Quinsigamond National*

*Bank,* 172 Mass. 363, 52 N. E. 387; *Walker & Brock* v. D. W. *Ranlett Co.,* 89 Vt. 71, 93 Atl. 1054; *Weed* v. *Boston & Main Railroad,* 124 Me. 336, 128 Atl. 696; *Cragie* v. *Hadley,* 99 N. Y. 131, 1 N. E. 537.

The legal effect of depositing a check or draft depends upon the intent of the parties. A depositor and his bank may agree that the bank shall collect the paper and credit it to him only when it is paid in the regular course of business; but in the absence of a special agreement it will be assumed that the deposit of paper for credit to a depositor's account was made and accepted to be dealt with in the ordinary course and according to the custom and practice prevailing and upon the situation of the account, between the depositor and the bank. By great preponderance of authority, where a depositor of checks or drafts is given credit as cash against which he has the right to draw, in the absence of an agreement or understanding to the contrary or proof of circumstances from which such an understanding may be inferred, the presumption is that title to the paper passes to the bank, although this is rebuttable by proof showing a contrary intention of the parties at the time of the deposit. The effect of the deposit is controlled by their intention as disclosed by the circumstances of the transaction, and if that intention is that the bank shall not be responsible except as an agent for collection, the title remains in the depositor. The intent of the parties may be ascertained from a consideration of the course of conduct or of business as disclosed, and when the depositor has been a regular customer a practice of permitting him to draw checks against his deposit account, including deposits of paper yet uncollected, has been regarded as a circumstance significant of a transfer of title. 5 Michie, § 32b, p. 67, § 32c, p. 69, and cases cited. Also, according to the

prevailing view, the fact that deposits are credited subject to payment or that the bank has the right to charge dishonored paper back to the depositor instead of proceeding against the maker, does not militate against the passing of title to it. This right is regarded as merely that of an indorsee against an indorser and hence not inconsistent with ownership. 5 Michie, § 32a, p. 59; 11 A. L. R. 1069; 42 A. L. R. 501; 68 A. L. R. 734; *Douglas* v. *Federal Reserve Bank,* 271 U. S. 489, 46 Sup. Ct. 554; *First National Bank* v. *First Utah National Bank,* 15 Fed. (2d) 913; *Blacher* v. *National Bank of Baltimore,* 151 Md. 514, 135 Atl. 383; *Weed* v. *Boston & Maine Railroad, supra; Andrew* v. *Security Trust & Savings Bank,* 214 Iowa, 1199, 243 N. W. 542.

The checks to which the present claim relates were indorsed to the Mechanics Bank without restriction, were deposited in the ordinary course of business, and were immediately credited to the checking account of the depositor, thus satisfying these elements of the rule. The other ingredient essential to a presumption of passing title is an immediate right to draw upon that part of the deposit representing checks not yet collected by the bank from the makers. As to this, the manner and condition of the deposit do not indicate any restriction of the right of withdrawal to collected items or any condition attaching to the deposit except the statement on the deposit slip which, under the circumstances of this case, can be taken to mean only that the bank reserved a right to charge back items which proved to be uncollectible and this, as we have seen, is not sufficient, of itself, to negative the passing of title to the bank. *Raynor* v. *Scandinavian-American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716. Although the teller to whom the

claimant's representative applied declined to certify a check which covered, in part, the uncollected checks, without the consent of the cashier, consideration of the other circumstances serves to dispel any doubt to which this incident might give rise. The only apparent purpose of the general rule of the bank requiring authorization by an officer thereof for the withdrawal of deposits credited but uncollected was to assure that the depositor was of such credit standing that recourse might be had in case of uncollected paper. In cases where the teller was familiar with the credit standing of a depositor and knew that it was good, he allowed withdrawal without official authorization. The teller who was asked to certify this particular check did not know the claimant's credit standing, but it is stipulated that his credit was good, also that in the past the bank had always honored its checks whether drawn against collected or uncollected items. It sufficiently appears that, under the rule and custom of the bank, the claimant-depositor possessed the right of withdrawal and doubtless would have been accorded it on this occasion, as it always had been, if its representative had chosen to apply to the proper official.

The result is that, prima facie, the bank, upon accepting and crediting the deposits, became the owner of the checks and the debtor of the depositor rather than a mere collecting agent. This doubtless accords with the understanding and intention, at that time, of the depositor who, we believe, would have been surprised by a suggestion that it retained, after depositing the checks, any interest in or control over them other than a liability to have any which proved uncollectible charged back on its deposit account. We find nothing in the facts as to the course of business of the bank with its depositors in general or with this

claimant which tends to rebut the presumption created by the agreed facts. The entire amounts of deposits were credited upon the claimant's pass-book, which contained no notice of any restraint upon the depositor's right of withdrawal. The deposit slips used by the claimant did not contain, as did some which were also in use in the bank, a stipulation that "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care;" therefore, we need not discuss the effect of a deposit made under such a condition further than to point out the possibility, created thereby, of an effect of according a preference over deposits of collected paper which may not have been in contemplation by the bank in imposing the condition. A further fact which we deem significant of an intent to create a general deposit rather than one for collection, is that where a customer was doubtful as to whether or not a particular check would be honored and wished to receive specific advice as to its payment, "or where the amount of a check was not to be credited to the depositor's account until the check was paid by the payee bank" and the Mechanics Bank received notice thereof, such check would be entered in a book called the "Foreign Collection Register" and would not be entered to the credit of the depositor upon his deposit account until the check had been paid.

Therefore, the facts establish that the checks in question, upon being deposited and credited, became part of the claimant's general deposit and we advise, accordingly, that the sum of $3780 representing the proceeds thereof should be classified and treated as a deposit within subdivision (3) of §3935 of the General Statutes, and that no part of the claim is entitled to

preference over that accorded to deposits under that statute.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.