GEORGE J. BASSETT, BANK COMMISSIONER, *vs.*
MECHANICS BANK OF NEW HAVEN.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued April 5th—decided June 8th, 1934.

*Arthur E. Feldman,* with whom, on the brief, was *James A. Shanley,* for the appellant (claimant).

*S. Frederick Welzler* and *Donald E. Cobey,* for the appellee (receiver).

BANKS, J.   On or before June 8th, 1932, the defendant bank received for collection a draft for $644.24, drawn by the Hungarian Flour Mills of Denver, Colorado, on Standard Flour Company, Inc., of New Haven, upon the margin of which was printed the following legend: "This draft is for collection only and is not to be treated as a deposit.   Funds obtained through its collection are to be remitted to us and are not to be commingled with other funds of the collecting bank."   The draft was accompanied by a letter of transmittal which contained the following request: "Please present for collection and remit proceeds to us in Chicago, St. Louis or New York Exchange."   On June 8th, the Imperial Flour Company, an enterprise closely associated with the Standard Flour Company, Inc., made a deposit in its account with the defendant bank of $781.86 and at the same time gave it its check on that account for $644.24 in payment of the draft, which was marked "paid" by the bank and the amount of the check charged against the account of the Imperial Flour Company.   On the same afternoon the bank, by way of remittance of the collection thus made, drew its draft for $643.89 on the Irving Trust Company of New York payable to the order of the

Hungarian Flour Mills, and mailed it to that company at Denver, Colorado. The defendant bank was closed by order of the bank commissioner before the usual banking hours on June 9th, 1932, and a receiver subsequently appointed. When the draft reached the Irving Trust Company, payment was refused because of the prior suspension of the Mechanics Bank. The latter had at all times on deposit with the Irving Trust Company funds sufficient to meet all obligations it had drawn against its account there, and its funds so on deposit at the time it closed have come into the hands of its receiver.

As stated in appellant's brief, there are two broad questions involved upon this appeal, first, whether or not the relation between the appellant and the Mechanic Bank continued to be that of principal and agent after the bank had effected the collection of this draft, and second, if so, whether or not the proceeds of the collection are traceable into the funds in the hands of the receiver of the bank. It is not disputed that the bank received the draft for collection as the agent of the appellant and that the relation of principal and agent continued at least until the bank had effected the collection. *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 202, 90 Atl. 369; *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 14, 160 Atl. 60. The fundamental question here presented is whether that relation continued after the collection or was succeeded by that of debtor and creditor, the ability to trace the fund being merely evidential as to the existence of one relation to the other. *Bassett* v. *City Bank & Trust Co., supra,* p. 15. Even though the fund has become a part of the general assets of the bank, if it can be traced into those assets, the trust may be imposed upon them to the extent of the fund.

*McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 186, 132 Atl. 902.

Ordinarily the relationship of principal and agent having been created continues until the completion of the transaction upon which the agent was employed. When an individual is employed to collect money for another and remit to him, the agency does not cease until the money is not only collected but remitted. The same would be true in the case of a draft sent to a bank for collection and remittance save for a presumption and a rule of law as to the relationship between a bank and its depositors. The presumption is that one sending to a bank paper for collection and remittance contracts with reference to the known custom of banks in making such collection to mingle the proceeds of the collection with its own funds, credit the drawer with the amount, and send him a draft on its own funds in payment. The rule of law relied on is that the deposit of the proceeds of the collection to the credit of the drawer creates the relationship of debtor and creditor, which is that existing between a bank and its depositors. Accordingly when, in the typical case, a draft is sent to a bank with instructions to collect and remit, many courts have held that the agreement contemplated a commingling of the proceeds of the collection with other funds of the bank and a payment by draft upon its own funds, and that this substitution of its own obligation for the proceeds of the draft was inconsistent with the idea of a trust, and created the relationship of debtor and creditor. Many other courts, however, have held that the transaction did not involve such an agreement on the part of the drawer of the check, and that the relationship of principal and agent continued until the transaction was completed by the remittance of the proceeds of the draft to the drawer. There appears to be an irrec-

oncilable conflict in the cases which will be found collected and analyzed in annotations in 24 A. L. R. 1152, 42 A. L. R. 754, 47 A. L. R. 761, and 77 A. L. R. 473.

We have had occasion to consider the general question in the two cases of *Lippitt* v. *Thames Loan & Trust Co.*, and *Bassett* v. *City Bank & Trust Co.*, *supra*. In both of these cases the drafts were received by the collecting bank, not direct from the drawers, but from forwarding banks. In the *Lippitt* case, drafts were forwarded by the reserve bank for "collection and remittance." We held that there was nothing in the facts presented and no legal inference to be drawn from the use of these words which compelled the conclusion that immediate remittance was intended. We took judicial notice of the custom that items collected for another bank are in fact credited, whether the letter of transmittal stated that they were forwarded "for collection and remittance" or otherwise, and that moneys of its correspondents, when collected, are mingled with the funds of the collecting bank. In the absence of other facts in the record indicating an intention to impress these items with a trust or otherwise, we held that the forwarding bank was a general creditor of the Thames Company and that the proceeds of the drafts were not impressed with a trust. In the *Bassett* case, items were forwarded to the defendant by a federal reserve bank for collection under an agreement between them that the defendant would collect and remit on the day of collection either by shipment of money or by bank drafts on New York or Boston. In that case we said (p. 21): "The owner or forwarder and the collector may so agree as to require collection in currency and remittance thereof, but manifestly such a course would be commercially impracticable as of general application; they might agree that the proceeds be held in

strict trust and remitted to the forwarder, but such intent is not manifested by the arrangement here presented." We held that the agreement contemplated and authorized the mingling of the proceeds of the collection with the general funds of the bank, which was equivalent to authority to the bank to use for its own purposes the money collected and substitute therefor its own obligations, thus creating the relation of debtor and creditor between the collecting and the forwarding bank.

As suggested in both of these cases, the question, in the last analysis, is one of the intention of the parties, and is so stated by courts which reach opposite conclusions as to the intention to be attributed to the parties when items are forwarded "for collection and transmission" without other indication of intention, except such as is to be gathered from the usages of banks in such cases and the knowledge of such usages imputed to the owner or forwarder of the paper. "The question may be said to be simply one of the intention of the parties. If they intended that the proceeds be remitted immediately upon receipt thereof, or if in any other way it can be shown that the parties intended that the proceeds of the check as well as the check itself should remain the property of the owner, such intention will control and the bank will not take title to the proceeds." 3 R. C. L. p. 633, § 261; *Bassett* v. *Mechanics Bank,* 117 Conn. 407, 413, 168 Atl. 12. See also cases collected in the A. L. R. annotations above referred to.

The appellant contends that in the legend appearing upon the margin of its draft it has clearly and unequivocally expressed its intention that the proceeds of the draft shall be held by the defendant as its agent, and has forbidden action by the latter which would create between them the relationship of debtor and

creditor. The legend provides that the draft "is for collection only and is not to be treated as a deposit," and that the funds obtained through its collection "are not to be commingled with other funds of the collecting bank." The purpose of this endorsement would seem to be obvious. It discloses a knowledge on the part of the appellant that, in the absence of such restrictive endorsement, the collecting bank, in accordance with custom, would treat the proceeds of the draft as a deposit and commingle them with its own funds. The instruction not to do this could have been given with but one purpose, that is, to avoid the creation of the relation of debtor and creditor which such a commingling of the funds might be held to create. The collecting bank cannot by its own action, unauthorized by the owner of paper sent it for collection, change the relationship between them from that of principal and agent to that of creditor and debtor. When such change of relationship is held to arise, it is based upon the presumption that the parties have contracted with knowledge of the usage of banks to commingle the proceeds of the collection with its own funds, and the owner of the paper is held to have contemplated and authorized such action with the result that there is attributed to him an intention to agree to the change of relationship to that of debtor and creditor. That the usage of the bank is to commingle the proceeds of the collection with its own funds is not conclusive that the parties intended that course should be followed if it actually appears that their intention was otherwise. The drawer of a draft sent to a bank for collection should be able to endorse it in such a manner as to indicate his intention that the proceeds are to be kept apart from the general funds of the collecting bank and held by it in its capacity as agent or bailee. That such is the result

effected by the endorsement upon the appellant's draft would seem to be evident. The draft was sent and received with the understanding and agreement that the proceeds of its collection were not to be deposited or commingled with the funds of the bank, clearly indicating an intention to avoid the possibility of a construction of the transaction such as is now claimed by the receiver.

In *Matter of International Milling Co.*, 259 N. Y. 77, 181 N. E. 54, a bank received for collection a sight draft to which was annexed a paster reading as follows: "This draft is not to be treated as a deposit. The funds obtained through its collection are to be delivered to the International Milling Company and are not to be commingled with other funds of the collecting bank." The bank collected the draft and mailed to the drawer a cashier's check for the proceeds, but was closed before the check was presented for payment. The court held that this language clearly and unequivocally evidenced the intention of the parties to prevent the creation of the relationship of creditor and debtor and that "to say that by crediting the proceeds to petitioner's account on the books of the bank and commingling the proceeds of the collection with the general funds of the bank changed the relation between the parties from that of bailor and bailee to that of creditor and debtor would be to give effect to a positive breach by the bank of its contract and to make binding upon the petitioner acts which it specifically contracted against but over which it had no control." In *Love* v. *Meridian Grain & Elevator Co.*, 162 Miss. 773, 139 So. 857, and *Kansas Flour Mills Co.* v. *New State Bank of Woodward,* 124 Okl. 185, 256 Pac. 43, it was held that similar instructions attached to drafts forwarded for collection clearly evidenced an intention to prevent the creation of a debtor

and creditor relationship by a commingling of funds after the drafts were collected.

We are unable to agree with the receiver's contention that the request in the letter of transmittal to "remit proceeds to us in Chicago, St. Louis or New York Exchange" was equivalent to an express grant of authority to the bank to commingle them with its own funds in spite of the alleged contrary instructions endorsed upon the draft itself. These instructions were mandatory, and, as already noted, clearly expressed a definite intention to prevent action which might be construed to make the bank its creditor rather than its agent to collect and remit. An intention to abandon that position and relinquish a right which it had been at some pains to protect is not to be inferred from the request in this letter of transmittal. It is not a grant of authority to the bank to deposit the proceeds of the draft and to pay by a draft upon its own funds in other banks. The request could be complied with by the purchase by the bank of Chicago, St. Louis or New York Exchange and is not to be construed as inconsistent with, or constituting an abandonment of, the dominant intention of the appellant to preserve the relationship between it and the bank as that of principal and agent. *Love* v. *Meridian Grain & Elevator Co., supra.* In receiving the bank's draft upon the Irving Trust Company and presenting it for payment, appellant did nothing more than coöperate with the bank in an attempted delivery of the proceeds of the collection, and did not estop itself to insist upon compliance with the terms of its contract. *Matter of International Milling Co., supra.* It does not appear that it knew either that a credit had been made in its favor or that the proceeds of the collection had not been kept by the bank in a separate account against which

the draft was drawn. It was entitled to rely upon compliance by the bank with the terms of its contract.

The receiver contends that, even though the bank acquired no title to the proceeds of the draft but held them as agent of the appellant, and thus impressed with a trust, the trust fund has not been traced into the funds in the hands of the receiver. The claim appears to be based primarily upon the ground that since the draft was not paid in cash, but by a check upon an account in the defendant bank, there was no increment to the assets of the bank to which the appellant's claim could attach, and which it could follow, as in the nature of a fund impressed with a trust, into the hands of the receiver. More specifically, the claim is made that there was no augmentation of the assets of the bank since, as stated in the brief of the receiver, "all that has resulted is an actual or constructive shift of bookkeeeping credits and liabilities, and the substitution by the bank of a new creditor (the drawer of the collection draft) for a previous one (the depositor)." This begs the main question presented in this case, to wit: the relationship between the drawer of the draft and the collecting bank after the draft had been paid. If the drawer is a creditor, as the receiver's brief assumes, no doubt the payment of the draft by the check of a depositor and the crediting of that amount to the account of the drawer, would effect simply a substitution by the bank of one creditor for another with no resulting increase in the assets of the bank. Where courts have held that, upon the payment of the draft, the bank holds the proceeds as the debtor of the drawer, they have quite logically held that the transaction did not result in any augmentation of the assets of the bank. Upon the hypothesis, however, that the bank holds the proceeds as the agent of the drawer, no question of credits is involved, since

it has no authority to credit them to the account of drawer. Though the actual money in the bank has not been increased, the result of the transaction is that the bank has in its possession a fund—the proceeds of the check which paid the draft—which does not belong to it, and which, if retained by it, will increase to that extent the funds coming into the hands of the receiver.

In a majority of the jurisdictions in which the question has been passed upon, the courts have taken the view that such a transaction results in an augmentation of the assets of the bank coming into the hands of its receiver, though a number, including many of the federal courts, hold that there has been a mere shifting of credits, which holding, as it seems to us, is sound only upon the assumption, which many of the cases seem to make, that the bank holds the proceeds of the draft as a debtor and has rightfully credited them to the account of the drawer. See comprehensive collection and analysis of the cases in annotation in 82 A. L. R. 97.

That the draft was not paid in cash should not affect the appellant's right to the proceeds, which should not depend upon such an adventitious circumstance as the drawee's medium of payment, which, as business is generally conducted, would be by check rather than cash. The payment of the draft by the delivery of the check of the Imperial Flour Company and the charging of the amount against its account, effected the same result as though the bank had cashed the check and the cash had been received in payment of the draft.

The draft was paid by the check of the Imperial Flour Company, which was charged against its account some time after three p. m. on June 8th, and the bank was closed before the usual banking hours the following morning. That the bank, when it was closed, had

on hand more than enough cash to cover the proceeds of this draft appears not to be questioned, and it is found that it had at all times enough funds on deposit with the Irving Trust Company to meet the draft sent to the appellant, and that these funds have come into the hands of the receiver.

We conclude that the Mechanics Bank held the proceeds of the collection of the appellant's draft as its agent, that such proceeds came into the hands of the receiver, and that the appellant is entitled to reclaim them from him.

There is error, the order of the Superior Court is set aside, and it is directed to enter an order granting the application of the appellant.

In this opinion the other judges concurred.