THE SOUTH END BANK AND TRUST COMPANY *v.* JOSEPH NASIN

BALDWIN, C. J., MURPHY, MELLITZ, SHEA and ALCORN, Js.

Argued January 7—decided March 1, 1960

*Louise H. Hunt,* with whom, on the brief, was *David Kotkin,* for the appellant (defendant).

*Thomas F. Gallivan, Jr.,* for the appellee (plaintiff).

MELLITZ, J.   The defendant was the general contractor for the construction of a school in Hebron. Constructor's Inc. was one of his subcontractors. On December 26, 1956, the defendant drew a check on the Willimantic Trust Company for $10,000 to the order of Constructor's Inc., in payment of services rendered on the school job, and delivered the check to the payee.   Constructor's Inc. endorsed the check "For deposit only, Constructor's Inc.," and deposited the check in its checking account in the plaintiff

bank on December 27, 1956. The deposit slip bore the following legend: "Items received for deposit or collection are accepted on the following terms and conditions. This Bank acts only as depositor's collecting agent and assumes no responsibility beyond its exercise of due care. All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent credits by this Bank at its own office. This Bank may forward items to correspondents and shall not be liable for default or negligence of correspondents selected with due care nor for losses in transit, and each correspondent shall not be liable except for its own negligence. Items and their proceeds may be handled by any Federal Reserve bank in accordance with applicable Federal Reserve rules, and by this Bank or any correspondent, in accordance with any common bank usage, with any practice or procedure that a Federal Reserve bank may use or permit another bank to use, or with any other lawful means. This Bank may charge back, at any time prior to midnight on its business day next following the day of receipt, any item drawn on this Bank which is ascertained to be drawn against insufficient funds or otherwise not good or payable. An item received after this Bank's regular afternoon closing hour or cut-off hour shall be deemed received the next business day."

Simultaneously with the deposit of the check, the plaintiff, despite the recitals in the deposit slip, credited the account of Constructor's Inc. with the amount of the check and gave it the right, without restriction or limitation, to draw immediately against the $10,000 credit. Before the deposit of the check, the balance in the account of Constructor's Inc. on December 27, 1956, was $331.02. Immediately

after the account was credited with the $10,000, Constructor's Inc. cashed a check for $5000 drawn on the account to its order, and on the same day it cashed four more checks totaling $2817.14. The following morning, December 28, it cashed a further check which more than exhausted the balance of the credit resulting from the $10,000 deposit. On many prior occasions the plaintiff had permitted Constructor's Inc. to withdraw funds against uncollected checks it had deposited. The plaintiff forwarded the $10,000 check through the usual banking channels for collection. The check reached the plaintiff's correspondent bank in Boston, Massachusetts, on December 28, 1956, and the Federal Reserve Bank in Boston on January 3, 1957. It was presented to the drawee, the Willimantic Trust Company, on January 3, 1957. The check was not paid. It was returned, reaching the plaintiff on January 7, 1957. The plaintiff then learned for the first time that a stop payment order had been issued by the defendant against the check. The defendant had notified the Willimantic Trust Company orally on December 28, and in writing on December 31, to stop payment, because he had learned on the afternoon of December 28 that Constructor's Inc. had not paid some of its equipment suppliers. By the time the defendant stopped payment on the check, the plaintiff had already paid out the entire amount of the $10,000 credit.

The defendant makes the claim that the plaintiff was not a holder in due course because the endorsement "For deposit only" was a restrictive endorsement under § 39-37 of the General Statutes and, under the provisions of §§ 39-38 and 39-48, this restrictive endorsement destroyed the negotiable character of the check, limiting the plaintiff to such action as

Constructor's Inc. could bring and making the plaintiff subject to any defense valid as between the defendant and Constructor's Inc.

The issue here is not determined solely by the character of the endorsement or by the statements on the deposit slip. We need not decide whether the endorsement is restrictive within the meaning of § 39-37 because the fact that an endorsement is restrictive does not necessarily prevent the endorsee from being a holder in due course. Brannan, Negotiable Instruments Law (7th Ed.) § 37. Irrespective of the language employed in the endorsement or on the deposit slip, the plaintiff and Constructor's Inc. had a legal right to make their own contract with respect to the deposit, so long as the rights of third parties were not injuriously affected and the contract was not contrary to law or public policy. *State Planters Bank* v. *Courtesy Motors, Inc.*, 250 N.C. 466, 472, 109 S.E.2d 189; *Old National Bank* v. *Gibson*, 105 Wash. 578, 582, 179 P. 117. The legal effect of the deposit of the check, as well as the controlling factor determining the legal relationship of the parties, is to be found in their intent as disclosed by the circumstances of the transaction at the time the deposit was made. *Bassett* v. *Mechanics Bank*, 117 Conn. 407, 413, 168 A. 12. In accordance with the practice, which had prevailed on many prior occasions, of permitting Constructor's Inc. to draw against deposits of checks yet uncollected, the proceeds of the check were made immediately available for withdrawal upon the deposit of the check by Constructor's Inc. Under such circumstances, the presumption is that title to the check passed to the bank. Id. It became a holder for value in due course. General Statutes § 39-53; *Lowrance Motor Co.* v. *First National Bank*, 238 F.2d 625, 628; *Campbell* v. *Noble-*

*Trotter Rice Milling Co.,* 188 S.C. 212, 224, 198 S.E. 373; *Pike* v. *First National Bank,* 99 Ga. App. 598, 606, 109 S.E.2d 620; 6 Zollman, Banks and Banking § 3725. The facts and circumstances surrounding the making of the deposit indicated a clear intention by the parties that Constructor's Inc. might draw against the deposit immediately, and it did so. The relationship between the parties was fixed by these unchallenged facts rather than by what appeared in the endorsement or on the deposit slip. When it was delivered by the defendant to Constructor's Inc., the check was negotiable on its face. Constructor's Inc. had the power to deliver it to the plaintiff, and the plaintiff could accept it for collection, or for credit to the account of Constructor's Inc. with a right in the latter to draw against it immediately. It was competent for the plaintiff to waive the provision printed on its deposit slip to the effect that it was acting merely as collecting agent, and the plaintiff manifested by its conduct with relation to the deposit that it did so. *Bassett* v. *Mechanics Bank,* supra.

The defendant put the check into circulation. Prior to receipt of notice that payment of it had been stopped, the plaintiff gave value and became the holder of the check in due course. The losses, if any, arising from a default by Constructor's Inc. in the performance of an obligation it owed the defendant must fall on the defendant. *Continental National Bank & Trust Co.* v. *Stirling,* 65 Idaho 123, 130, 140 P.2d 230.

There is no error.

In this opinion the other judges concurred.